MOTOR TRUCK TRANSFER, INC., *v.* SOUTHWESTERN
TRANSPORTATION CO.

4-5294                                           122 S. W. 2d 471

Opinion delivered December 12, 1938.

*William W. Shepherd* and *Charles W. Mehaffy,* for
appellant.

*Walter L. Brown, B. F. Batts* and *Gaughan, Sifford,
Godwin* and *Gaughan,* for appellee.

BAKER, J. There is an elaborate record made in this
case wherein the appellant is referred to as the Motor
Truck Transfer, Inc., and also is sometimes mentioned
under the name of the manager, Mr. Garms. This appel-
lant had been operating motor truck lines for a period of
about seven years under a special permit during the
whole time. The special permit was one under which the
appellant was authorized to handle or move heavy ma-
chinery and building materials. There is much in the
record that shows that this appellant was perhaps better
fitted or equipped to handle extremely large tanks, heavy

road machinery and heavy or extraordinary bulky farm machinery. Without attempting to quote from the proof, it may be said that the service of the appellant company to its particular customers was generally satisfactory and the appellant, perhaps, did a considerable volume of business. During the last part of the period that it was operating, it handled all kinds of commodities found ready for transport throughout the territory in which it operated. Mr. Garms himself says that he was serving other motor companies or carriers by taking off of them the hauling of heavy articles. He was asked if the reason he did not engage in the transportation of other articles was because he had only a special permit and he stated that that was the reason for the injunction and why he had applied to the commission, asking for a permit and saying that "I want to abide by the law and meet the law and I want to be so they can't injunction me on some other terms, and if I don't haul general commodities it will be impossible to haul special commodities, and so far as I can see if I am to haul everything it would be general commodities. I didn't haul just one thing for one man. They were busy—hundreds of them—and couldn't get here—that wants my service. I could get lots of letters to that effect."

There may have been, and perhaps was, a demand for the kind of service rendered by Mr. Garms' corporation.

Our attention is called to the order made by the corporation commission which was sustained upon appeal to the circuit court. The provisions of law under which these appeals may be prosecuted are such that upon trial of the matters in issue upon the appeal from the corporation commission the circuit court is in no manner bound by the order of the commission and upon appeal from the circuit court, the matter is presented here upon the record made before the corporation commission, according to §§ 2019 and 2020, Pope's Digest, for trial of the same issues *de novo* and the proceeding is not essentially different from the rules of law in regard to appeals from chancery court decrees. *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160; *Bryant* v. *Edgmon,* 192 Ark. 20, 90 S.

W. 2d 994. The legal effect of these provisions in regard to appeals is that as to the substantial rights of the parties we shall not be influenced or governed by the orders of the commission or judgment of the circuit court to reverse which appeals are presented. There can be no fair understanding, however, of the issues presented here unless it is recognized that the matter before us is not a mere petition for a license to operate. The court may not issue or grant licenses. It is a presentation of the issues to determine whether the commission making the order denying the license to the Motor Truck Transfer, Inc., should be sustained or overruled. That is a matter that has been argued here. Appellant argues that the commission was arbitrary; that its action was an unwarranted abuse of its discretion and that we should so declare and direct, by proper order, that proper license be issued to the appellant.

The appellees in this case are made up of different parties who have intervened, asked to be made parties to the proceeding, and who have offered substantial testimony to the effect that the territory that the Motor Truck Transfer proposes to serve is already amply provided for by the numerous truck organizations operating therein. The proof shows that they are operating only about 40 per cent. to 60 per cent. capacity and could take care of a considerably larger volume of business, if it were offered. Without any attempt at an analysis of all this volume of testimony we think our conclusion may be stated in a very short form.

The only substantial evidence that it is a matter of convenience and necessity that license should be granted to the appellant company is the fact that Mr. Garms, as the manager, through experienced and trained employees, is most likely better fitted than anyone else to handle heavy machinery and like products than any of the other motor transport organizations. It was licensed to handle and transport such commodities under the special license under which it operated before this litigation was started.

It does not follow, however, as a necessary conclusion that license should be granted to appellant. Others might easily prepare themselves to handle this particular

class of freight or commodities. It is shown by substantial evidence and not denied that the appellant company, prior to the time of this litigation, was not confining itself to the class of commodities which it was licensed to move or haul, but was seizing upon and soliciting every class of freight usually transported in the community in which it operated. This it did not have a right to do under the special permit. To that extent it did not obey the rules and regulations of the commission, but refused to be bound by them. Moreover, for some reason it operated for a time without the bond or insurance contract required to be carried by it. Though repeatedly notified by the commission to furnish or supply such bond or insurance, it refused, or, at least, failed to do so. This was the public liability insurance that every motor truck operator is required to provide, when it begins operation, or, at least, within a reasonable time thereafter. The Motor Truck Transfer refused to be bound by fixed tariffs and would not, or, at least, did not file with the corporation commission, as required by its rules any tariff for freights, to be charged, and it was the arbitrary action or refusal to observe these salutary rules or regulations that caused the appellant company to be cited for a hearing. The fact that the appellant company did all these things is not excused by any explanation made.

No emergency is shown, nor does the appellant company offer any other excuse.

There is no contention by it that such regulations are arbitrary, illegal or unenforceable. Hence, there is no necessity of a consideration of such rules and regulations except to say that such rules and regulations are generally made and enforced in the interest of the public as a primary matter and for the protection of other carriers of like kind whose business is subject to the same form and character of regulation. It should take no argument to determine that those engaged in this class of business were entitled to a substantial return upon the investment made, for the labor employed, and as compensation for ability to create and properly operate a public service organization. Regulation is necessary when public roads are used by these transportation agencies. They

were not built as arteries for the moving of freight alone, nor may they be used freely on all occasions and everywhere by those who refuse to observe the rights of others, on the same public highways.

Without attempting to be too critical of the conduct of others, it appears to us that the only arbitrary action that has been taken in this whole controversy arises out of the conduct of Mr. Garms and his corporation in their refusal to be bound by the regulatory provisions of the commission. The right to make rules and regulations necessarily implies a power that may be exercised for their enforcement.

It is argued here that the appellant company has made rather heavy investments to perform the particular service which it has heretofore been licensed to do; that the action of the commission in refusing to issue a new, and what we presume is desired, general license is not only arbitrary, but it is the taking of property, or what amounts to the same thing, a destruction of appellant's property, to refuse to permit it to go on. We do not think so. Most probably had the appellant company been obedient to the rules and regulations made for the benefit of the public and for its own protection, it might yet have been operating. If its property has been sacrificed it has been the victim of its own conduct.

We do not have to go as far in deciding this case as the court did in supporting the commission's rules and regulations in the case of *St. L., I. M. & S. Ry.* v. *State,* 99 Ark. 1, 136 S. W. 938. There the court merely determined that, though it might differ with the commission, it would support the commission's order unless it was clearly arbitrary and unreasonable.

We recently had occasion to consider a matter similar to the one here presented. *Jernigan, Bank Commissioner,* v. *Loid Rainwater,* 196 Ark. 251, 117 S. W. 2d 18. While this matter covers an entirely different economic activity, it involved the regulatory power and provisions of the Securities Division of the Banking Department and in that respect is similar to the matter under consideration. The petition for the granting of license called for the exercise of discretion reposed in the bank commis-

sioner. We there said: ". . . He, in the first instance, and we, upon appeal, may review this action to determine whether there has been an arbitrary decision, or an abuse of discretion, but we should regard and uphold the decision of the Securities Division of the State Banking Department unless it be made to appear that there was an abuse of discretion or an arbitrary decision."

The authorities there cited, we think, support the conclusion we announced.

The announcement just quoted is a proper criterion for our action here. The judgment of the court is sustained and affirmed.