Wisinger *v.* Stewart.

4-8924                                    223 S. W. 2d 604

Opinion delivered October 17, 1949.

*Ed E. Ashbaugh,* for appellant.

*McKay, McKay & Anderson,* for appellee.

LEFLAR, J. Appellant Wisinger applied to the Arkansas Public Service Commission for a certificate authorizing him to operate a motor transport line for hauling heavy oil field equipment over certain named highways, with headquarters at El Dorado. At the hearing, Wisinger's evidence indicated the inadequacy of existing motor transport service of this type. Opponents gave evidence tending to show that existent services were adequate. The Public Service Commission's order found the facts to be in accordance with the evidence given by Wisinger, and a certificate was issued permitting him to operate, for the purpose stated, over the highways designated, which included highways throughout the entire South Arkansas oil fields and adjacent areas. On appeal to the Circuit Court, the holding was that there was ample evidence to sustain the finding that public convenience and necessity required an additional carrier in the vicinity of El Dorado, but that there was insufficient evidence to show such need at any place ''other than El Dorado, Arkansas, and the immediate vicinity thereof,'' and the case was remanded to the Commission with instructions to ascertain and fix the area covered by ''the immediate vicinity'' of El Dorado. Wisinger appeals from that part of the Circuit Court's judgment which would thus limit the area covered by his certificate. No cross-appeal has been taken, by the opponents of the application, from that part of the Circuit Court judgment which affirmed the granting of the certificate for highways in El Dorado and its immediate vicinity.

The only question here, then, is as to the propriety of the Circuit Court judgment insofar as it in part set aside the Commission's order. Analysis of the evidence received in the case has convinced us that the Commission's original order should be reinstated.

The statute which prescribes the scope of judicial review of orders of the Public Service Commission is Act 124 of 1921, the relevant parts of which appear in Ark. Stats. (1947), §§ 73-133 and 73-134. These sections governed judicial review of orders of the old Railroad Commission. By Act 12 of 1933 the functions of the Railroad Commission were transferred to the newly created Corporation Commission, but the scope of appeal (Act 12 of 1933, § 9) remained unchanged. Act 324 of 1935 set up the Department of Public Utilities within the Commission, and prescribed a different scope of appeal from its orders, Ark. Stats. (1947), § 73-233, but made no change in the law governing other appeals. Then Act 40 of 1945 abolished both the Corporation Commission and the Department of Public Utilities, combining the two agencies as the present Public Service Commission. The Act of 1945, however, made no change in the existent law as to judicial review. Fortunately or unfortunately, the law was left in the situation of providing one rule for review of orders issued in cases jurisdiction over which was inherited by the new Commission from the Department of Public Utilities, and another rule for cases the jurisdiction in which was inherited from the old Corporation Commission and the Railroad Commission. (For a study of this entire matter, see the Comment on Judicial Review of Findings of the Arkansas Public Service Commission in 2 Ark. L. Rev. 67.)

The guiding principles of judicial review applicable to appeals such as this one have been stated several times. They are:

"A. This court tries this case de novo, and renders such judgment as appears to be warranted and required by the testimony. . . .

"B. The general rule is that a certificate may not be granted where there is existing service in operation over the route applied for, unless the service is inadequate, or additional service would benefit the general public, or unless the existing carrier has been given an opportunity to furnish such additional service as may be required." Santee v. Brady, 209 Ark. 224, 227, 189

S. W. 2d 907, 909; quoted in *Arkansas Motor Freight Lines* v. *Batesville Truck Line,* 214 Ark. 448, 216 S. W. 2d 857.

C. ". . . it must be remembered that we are dealing with the finding of a tribunal erected by the Legislature for the special purpose of investigating and determining matters of the nature here involved; and the finding of such a tribunal on a fact situation may not be upset by the courts unless the finding is clearly against the weight of the testimony." *Arkansas Express, Inc.* v. *Columbia Motor Transport Co.,* 212 Ark. 1, 7, 205 S. W. 2d 716, 719.

A point not to be lost sight of here is that *de novo* review by the courts, including this Court, must not proceed as though the Public Service Commission did not exist and had never held a hearing. A hearing has been held, and the Commission which held the hearing has had the advantage of seeing and hearing the parties and witnesses face to face, whereas the Circuit Court and this Court review the evidence from the record only. "Where a matter is heard and decided by an administrative body such as the Public Service Commission, an order made by it should be upheld by the court on appeal unless it is against the weight of the evidence." *Camden Transit Co.* v. *Owen,* 209 Ark. 861, 863, 192 S. W. 2d 757, 758. "We try cases of this kind *de novo,* but it is the duty of the courts to accord due deference to the finding of the Commission, since it is the agency upon which the General Assembly has placed the duty to investigate and determine, in the first instance, the need for any proposed motor carrier service." *Schulte* v. *Southern Bus Lines,* 211 Ark. 200, 202, 199 S. W. 2d 742, 743. *Accord: Motor Truck Transfer, Inc.* v. *Southwestern Transportation Co.,* 197 Ark. 346, 122 S. W. 2d 471.

The first case to come up under the judicial review sections of Act 124 of 1921 was *St. Louis Southwestern Ry. Co.* v. *Stewart,* 150 Ark. 586, 235 S. W. 1003, decided in 1921, and McCulloch, C. J., there said: "The statutes of the State lodged (that) power, primarily, in the

. . . Commission, and it was not the purpose, we conceive, of the framers of the statute in allowing an appeal to substitute the judgment of the courts, unless it appears that an error was made by the Commission in its conclusions."

In another recent case the following language was used: ". . . the statute . . . required this court, upon the appeal to it, to hear the matter *de novo,* and to render such judgment upon appeal as appeared to be warranted and required by the testimony. And so we do, but we cannot ignore the fact appearing in the record before us that a protracted hearing was had, both before the Commission and in the Circuit Court on appeal, and, while the burden was on petitioners to make the affirmative showing that the public convenience and necessity required the issuance of the permit, that finding has been made, and should now be affirmed unless it appears to be contrary to a preponderance of the testimony. We hear chancery appeals *de novo,* but, when we have done so, we affirm the findings of the chancellor on questions of fact unless his findings appear to be contrary to a preponderance of the evidence." *Potashnick Truck Service* v. *Missouri & Arkansas Transportation Co.,* 203 Ark. 506, 508, 157 S. W. 2d 512, 514; quoted in *Southeast Arkansas Freight Lines* v. *Arkansas Corporation Commission,* 204 Ark. 1023, 166 S. W. 2d 262.

This Court's proper task, in the light of this state of the law, is to inquire whether the determination of the Commission was contrary to the weight of the evidence. As already indicated, we have found that it is not.

Applicant Wisinger's witness, M. F. Gathright, a rig building contractor, testified that he operated in an area running 75 or 80 miles from El Dorado, that his work required heavy equipment to be hauled not only in and around El Dorado but "from one field to another," "and sometimes from other states," that other operators lacked adequate equipment for handling his work, that there had been delays in rendition of service by other operators, that applicant Wisinger had been employed

by other operators to do work which they were unable to attend to for their customers, and that he and others had need of applicant's services in the oil field areas in which they worked.

Another witness, J. B. Cunningham, testified to the same general effect as to the need for the service, and that "Our business is all spread (out) . . . throughout the oil fields in Southeastern Arkansas." C. R. Douthitt testified that he needed applicant's services, and that he was "operating in Union, Ouachita, and Columbia counties." H. N. McClatchey testified similarly, and that he served oil fields in Union, Ouachita and Columbia counties, "and farther than that, if they want it, all over the Arkansas fields." J. E. Cox testified that he needed applicant's services, and that "I cover the oil fields in South Arkansas and part of North Louisiana." Three of the opponents' own witnesses, G. W. Benefield, Rodney Stewart, and J. E. Purkins, testified in terms of operations outside Union County.

This affirmative testimony was sufficient to justify the Commission in concluding that the oil fields of South Arkansas constitute an inter-related unit in respect to the matters involved in this application, and that the application should be granted for the entire territory constituting that inter-related unit.

The order of the Commission included authority to operate on some highways outside the oil fields altogether. The relevance of these highways to oil field operations is not clear, but it suffices now to point out that the certificate of public convenience and necessity permits the applicant to move only oil field equipment over the designated highways, and none of the opponents has shown that the certificate, insofar as it relates to these off-the-field highways, will in any way interfere with his business.

The judgment of the Circuit Court is reversed, and the order of the Public Service Commission is reinstated as originally entered.