MIDWEST BUSLINES, INC. v. GREAT SOUTHERN COACHES, INC.

4701 433 S.W. 2d 374

Opinion Delivered November 11, 1968

*Warren & Bullion* and *D. Paul Stafford* (of counsel) for appellant.

*Smith, Williams, Friday & Bowen* by *John T. Williams & William H. Sutton* for appellee.

GEORGE ROSE SMITH, Justice. The appellee, Great Southern Coaches, Inc., is a comparatively small bus company that was organized in 1942. Its headquarters are in Jonesboro. When the present application for a certificate of convenience and necessity was filed, Coaches was operating intrastate in northeast Arkansas and interstate to St. Louis and Memphis. Among its schedules were two round trips daily from Paragould to Jonesboro to Newport.

In the case at bar Coaches applied to the Interstate Commerce Commission and to the Arkansas Commerce Commission for permission to extend the line in question from Newport to Little Rock, down U. S. Highway 67, thereby providing through service from Paragould, Jonesboro, and most intermediate points to Little Rock, and to increase its schedules upon the new route to four

round trips daily. The application was resisted by the appellant, Midwest Buslines, Inc., which was the only bus company operating from Little Rock to Newport along the route that Coaches proposed to enter. By consent the interstate and intrastate applications were heard together, the Interstate Commerce Commission appointing the Honorable David Panich, a member of the Arkansas commission, as its hearing officer in the case. This appeal, which of course involves only the intrastate application, is from an order of the Arkansas Commerce Commission (affirmed by the circuit court) granting Coaches' application to extend its service.

Coaches introduced one company witness and almost a hundred public witnesses to establish its contention that the proposed single-line through service from Paragould to Jonesboro to Newport to Little Rock will benefit the general public. Midwest's only testimony was given by two company witnesses. They testified in substance that: (a) Midwest, as a part of its interstate and intrastate service, operates six trips daily in each direction between Little Rock and Newport; (b) Midwest's seating capacity is sufficient to meet the demand for transportation between those two points; (c) Midwest's equipment is of excellent quality; and (d) the granting of Coaches' application will create a competitive situation substantially reducing Midwest's revenues from this particular part of its transportation system. It is fair to say that Coaches does not seriously dispute any of the four assertions of fact that we have just enumerated.

The pivotal issue before us, emerging from an extensive record, is really a narrow one. Did Coaches sustain its burden of proving that, should its application be granted, the ensuing benefits to the general public will outweigh the ensuing loss of revenue to be suffered by Midwest?

Upon that vital issue Midwest's contentions are simple. Midwest says—and we agree—that Coaches' ninety-odd public witnesses are not complaining about the quality or adequacy of Midwest's bus service between Little Rock and Newport. Instead, says Midwest, the witnesses' real grievance centers upon the inconvenience of having to change bus lines at Newport and of having only two daily trips by Coaches to connect with Midwest's six trips. Coaches, for example, provides no night service to or from Newport, so that its passengers cannot conveniently ride the Midwest buses that reach Newport at night.

Midwest insists, first, that Coaches could improve the over-all service in the area by increasing its round trips from Paragould to Newport, so that Coaches' patrons could take full advantage of the six round trips provided by Midwest between Newport and Little Rock. Second, Midwest contends that its suggested solution of the problem—for Coaches to increase its daily round trips from Paragould to Newport—would leave as Coaches' only complaint the inconvenience suffered by its passengers and shippers in having to change buses at Newport. That inconvenience, argues Midwest, is not alone a sufficient basis for granting Coaches' application for a through-service permit.

We are not convinced by either aspect of Midwest's argument. Midwest, a subsidiary corporation, is part of an integrated bus system, composed of various companies known collectively as Continental Trailways, which is shown to be the second largest bus carrier in the world. Under Midwest's suggestion, Coaches would apparently become in part a feeder line to serve Continental Trailways at the Newport terminal. Uncontradicted, however, is the testimony of Coaches' company witness that it would lose money if it attempted to increase its round trips to Newport only. "It is impossible to provide such service and secure people to ride the bus when you start out and have to change in

fifty miles.'' According to this witness, the longer trip to Little Rock is essential if the expanded service is to be economically justified.

Second, the difference between single-line service and interline service is not the only point of contention here, as it was in cases cited by Midwest. Among the authorities cited is *Continental Southern Lines* v. *United States,* 265 F. Supp. 218 (W.D. La. 1967). There the court, in sustaining the Interstate Commerce Commission's denial of Continental's application for a permit to extend its service, approved this excerpt from the Commission's opinion:

"In our opinion, applicant has failed to show a need for the proposed service. Applicant has the burden of establishing by clear and convincing evidence that available carriers cannot or will not meet a substantial public demand or need. The public witness support arises from a desire for single-line transportation. Although present service is not as convenient as that proposed by applicant, we do not believe that the evidence of record reveals any material deficiencies in existing service sufficient to justify the operations proposed herein. The public witnesses in support of the application use bus service infrequently. Moreover, we are not convinced that the proposed operation would produce any substantial increase in its use.

"Although the public is normally entitled to the best available transportation facilities, the additional convenience of persons residing adjacent to or in the immediate vicinity of the proposed route must be measured against the effect such facilities would have on existing transportation service. Protestant is able to handle additional passengers and meet the reasonable transportation requirements of the supporting shippers. We conclude, therefore, that applicant has failed to meet its

burden of proof, and that no public need has been shown for the service proposed. To grant the application would merely result in the introduction of a single-line operation between Meridian and Tuscaloosa in competition with a carrier whose service has not been shown to be either inadequate or unsatisfactory.''

It will be noted that the Commission attached importance to the want of proof that the proposed single-line service would produce any substantial increase in the demand for bus service. By contrast, in the case at bar there is an impressive volume of proof adduced to show that the granting of Coaches' application will generate new business for the bus industry in northeast Arkansas. Among the public witnesses, college officials and parents explained the transportation problem of college students in the area. Others who will utilize Coaches' expanded passenger service include veterans traveling to and from Government facilities in Little Rock, at least eight witnesses who will regularly use the new schedules to visit members of their families, and many others. Equally persuasive is the testimony about the increased use of motorbus parcel-delivery service that can be expected from banks, utility companies, auto parts suppliers, surgical supply companies, florists, architects, and others who need a quick and reliable means of obtaining small but essentially important packages from Little Rock and elsewhere.

In holding that the Arkansas Commerce Commission's decision is not against the weight of the evidence we do not imply that the issues are so simple as to be free from doubt. But, as we pointed out in *Wisinger* v. *Stewart*, 215 Ark. 827, 223 S.W. 2d 604 (1949): ''A point not to be lost sight of here is that *de novo* review . . . must not proceed as though the Public Service Commission [Commerce Commission] did not exist and had never held a hearing. A hearing has been held, and the Commission which held the hearing has had the

advantage of seeing and hearing the parties and witnesses face to face, whereas the Circuit Court and this Court review the evidence from the record only.'' Moreover, as we went on to say in that case, ''it is the duty of the courts to accord due deference to the finding of the Commission, since it is the agency upon which the General Assembly has placed the duty to investigate and determine, in the first instance, the need for any proposed motor carrier service.'' After a careful study of this record we cannot say that the challenged order is against the preponderance of the proof.

Affirmed.