CC-1999-68                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Puerto Rico Telephone Company<br>    Peticionaria<br><br>    v.<br><br>Junta Reglamentadora de<br>Telecomunicaciones de Puerto Rico<br>    Recurrida | Certiorari<br><br>2000 TSPR 83 |

Número del Caso: CC-1999-0068

Fecha: 12/junio/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Jeannette Ramos Buonomo

Abogados de Puerto Rico Telephone Company:

> Fiddler, González & Rodríguez
> Lcdo. Armando Martínez Fernández
> Lcdo. Eliseo Ortiz Rivera
> Lcdo. Miguel A. Díaz Rivera

Abogados de la Junta Reglamentadora:

> Lcdo. Omar E. Martínez Vázquez
> Lcdo. José R. Gaztambide

Abogados de Teléfonos Públicos:

> Axtmayer, Adsuar, Muñiz & Goyco, PSC
> Lcdo. Danilo M. Eboli
> Lcdo. Edwin Quiñones
> Lcdo. Francisco A. Rullán

Materia: Revisión de Decisión de Agencia Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Puerto Rico Telephone
Company

    Peticionaria

      v.                  CC-1999-68       CERTIORARI

Junta Reglamentadora de
Telecomunicaciones de
Puerto Rico

    Recurrida


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ


**San Juan, Puerto Rico a 12 de junio de 2000**


**La Puerto Rico Telephone Company solicita la revisión de una resolución emitida por el Tribunal de Circuito de Apelaciones mediante la cual el referido foro intermedio apelativo determinó que la Ley 213 de 12 de septiembre de 1996, 27 L.P.R.A. sec. 265 et seq., le concedió a la Junta Reglamentadora de Telecomunicaciones de Puerto Rico (Junta Reglamentadora) todos los poderes incidentales necesarios para cumplir con los propósitos de la referida Ley, incluyendo la facultad de imponer nuevas tarifas máximas a determinada compañía, una vez la mencionada Junta**

**Reglamentadora determina que las tarifas originales de dicha compañía no están basadas en costo, y por lo tanto son ilegales.**

I

El 8 de enero de 1998, la compañía Teléfonos Públicos de Puerto Rico, Inc. (TPPR) presentó una querella ante la Junta Reglamentadora contra la Puerto Rico Telephone Company (PRTC), alegando que los cargos impuestos por la PRTC al servicio de interconexión de teléfonos públicos violaban la Ley de Telecomunicaciones de Puerto Rico de 1996, 27 L.P.R.A. sec. 265 et seq, la Ley Federal de Telecomunicaciones de 1996, 47 U.S.C. sec. 251 et seq, y las Reglas de la Comisión Federal de Telecomunicaciones.

El 11 de febrero de 1998, luego de celebrar la vista en sus méritos, la Junta Reglamentadora *motu proprio* emitió resolución enmendada, en la cual determinó que, conforme la prueba presentada, algunos cargos de la PRTC, aplicables al servicio de interconexión de teléfonos públicos, no estaban basados en costo y ordenó a ésta fijar unas tarifas específicas para dichos servicios. Oportunamente, TPPR solicitó la reconsideración de dicha resolución.[1] Por su parte, la PRTC solicitó la reconsideración parcial[2] y se opuso a la solicitud de reconsideración de la TPPR.

---

[1] TPPR solicitó la reconsideración del método utilizado por la Junta para determinar si los cargos estaban basados en costo.

[2] PRTC cuestionó, entre otras cosas, la autoridad de la Junta para fijar tarifas.

Acogidas ambas solicitudes de reconsideración, el 27 de mayo de 1998, la Junta Reglamentadora emitió resolución y orden en reconsideración, en la cual, no obstante reconocer que su facultad para fijar tarifas no era ilimitada, resolvió que sí tenía autoridad para revisar tarifas y determinar si las mismas estaban basadas en costo. Determinó la Junta Reglamentadora que lo procedente era cambiar la naturaleza precisa de las tarifas por un "tope máximo", ordenándole a la PRTC establecer unas tarifas de servicios, basadas en costo, que no excedieran dicho tope. Expresó que así actuaba ya que había presumido, erróneamente, que la PRTC establecería, *motu proprio*, tarifas basadas en costo. Finalmente, la Junta Reglamentadora ordenó a la PRTC someter las nuevas tarifas no más tarde del día 30 de junio de 1998, y dispuso que, de ser éstas más altas que el tope máximo establecido por la Junta Reglamentadora, la PRTC podría solicitar una revisión de los datos con apoyo en los costos. De ese ser el caso, la Junta Reglamentadora revisaría permitiendo la participación de todas las partes interesadas conforme a los procedimientos administrativos adoptados en su Reglamento de práctica y procedimiento general.

En relación con dicha resolución y orden en reconsideración, el 26 de junio de 1998, la PRTC presentó recurso de revisión ante el Tribunal de Circuito de Apelaciones.[3] En el mismo cuestionó la autoridad de la Junta

---

[3] En Junta Examinadora de Tecnólogos Médicos v. Anneris Elías y otros, res. el 26 de noviembre de 1997, 144 D.P.R.

Reglamentadora para establecer topes máximos de tarifas, ordenar a la PRTC establecer tarifas iguales o menores a dichos topes máximos, y crear un procedimiento de revisión de tarifas en ausencia de una querella. La PRTC acompañó la solicitud de revisión con una moción en auxilio de jurisdicción, la cual fue declarada con lugar, ordenando el referido foro apelativo intermedio la suspensión de la resolución emitida por la Junta Reglamentadora el 27 de mayo de 1998.[4]

El 18 de diciembre de 1998, el Tribunal de Circuito de Apelaciones emitió resolución, mediante la cual determinó que la Junta Reglamentadora había actuado <u>dentro</u> de los poderes amplios concedidos por la Ley 213, ante, los cuales al ser interpretados liberalmente, según dispone la Ley,

_____

_____ (1997), resolvimos que la revisión judicial de decisiones administrativas se limita a órdenes o resoluciones finales de las agencias administrativas. Ahora bien, resolvimos también que una resolución administrativa, aunque interlocutoria o parcial, es susceptible de revisión judicial cuando se trate de una actuación ultra vires, sin jurisdicción, del foro administrativo.

En el presente caso la actuación de la Junta que ha sido impugnada judicialmente no es una decisión final de esa agencia, que adjudique de modo concluyente los asuntos substantivos en cuestión. Pero, dado que el planteamiento traído por la PRTC es que la Junta actuó ultra vires, por ser una cuestión estrictamente de derecho procede la revisión judicial de la misma.

[4] Luego de las partes presentar sus respectivos alegatos, el foro intermedio apelativo ordenó a las partes presentar memorandos de derecho relacionados con el historial legislativo de la Ley de Telecomunicaciones de Puerto Rico. Además, el tribunal permitió la participación de tres (3) compañías de larga distancia como amicus curiae y la oposición de TPPR a la solicitud de revisión de la PRTC. El 9 de diciembre de 1998, el Tribunal de Circuito de Apelaciones celebró una vista oral con el propósito de conocer mas a fondo los argumentos de las partes.

permiten que la Junta Reglamentadora establezca los remedios necesarios para cumplir con el propósito de dicha Ley. Es decir, resolvió que la Ley 213, ante, otorga el poder a la Junta Reglamentadora para, una vez evalúe una querella y determine que los cargos no están basados en costo, establecer las tarifas basadas en costo, según la evidencia presentada, y ordenar a la compañía modificar sus tarifas a unas iguales o menores a las establecidas por la Junta Reglamentadora. En cuanto al procedimiento de revisión, en caso de querer establecer tarifas mayores a los topes máximos, el foro intermedio apelativo determinó que es una alternativa que la Junta Reglamentadora provee a la PRTC dentro de la querella original, como modo alterno para resolverla.

**Inconforme, la PRTC acudió ante este Tribunal, vía certiorari, en revisión de dicha resolución. Le imputó al foro intermedio apelativo haber errado:**

A.  "...AL RESOLVER QUE LA JUNTA TIENE PODER PARA ESTABLECER "TOPES MAXIMOS DE TARIFAS BASADAS EN COSTO" AL ADJUDICAR UNA QUERELLA AL AMPARO DEL ART. III-7."

B.  "...AL RESOLVER QUE EL PODER DE IMPONER TARIFAS MAXIMAS EN EL CONTEXTO DEL ART. III-7 CONSTITUYE UNA FACULTAD "IMPLICITA E INCIDENTAL" DE LA JUNTA."

C.  "...AL RESOLVER QUE LA JUNTA NO ESTABA EJERCIENDO FUNCIONES TARIFARIAS AL PRESCRIBIR LOS TOPES MAXIMOS EN CUESTION."

Expedimos el auto de certiorari. Estando en condiciones de resolver el mismo, procedemos a así hacerlo.

II

Antes de analizar el asunto que hoy nos ocupa es menester que expongamos brevemente la trayectoria histórica de las telecomunicaciones a nivel local y federal.

**La Ley Federal de Comunicaciones de 1934 fue aprobada por el Congreso durante la gran depresión, para principalmente proteger a los consumidores de la AT&T la cual, mediante una política intensa de consolidación, había adquirido un monopolio de todos los segmentos de la industria de las telecomunicaciones.[5] Por varias décadas, la sociedad había percibido a la industria telefónica como un "monopolio natural", que no permitía la competencia, en la que sólo existía un proveedor de servicio, y la que debía ser reglamentada para beneficio de los consumidores.[6]**

**Con este objetivo en mente, la Ley Federal de Comunicaciones de 1934 proveyó para la creación de la Comisión Federal de Comunicaciones (FCC por sus siglas en inglés) cuyo propósito primordial era regular el servicio telefónico interestatal. Específicamente, la FCC regulaba los precios, y tomaba otras decisiones en protección del interés público. Mientras que la FCC tenía jurisdicción para regular los servicios interestatales, los servicios intraestatales eran regulados por las comisiones estatales.**

---

[5] **Kerf and Geradin, CONTROLLING MARKET POWER IN TELECOMMUNICATIONS: ANTITRUST VS. SECTOR SPECIFIC REGULATION AN ASSESSMENT OF THE UNITED STATES, NEW ZEALAND AND AUSTRALIAN EXPEERIENCES, 14 Berkeley Tech. L.J.919 (1999).**

[6] **BREAKING UP THE LOCAL TELEPHONE MONOPOLIES: THE LOCAL COMPETITION PROVISIONS OF THE TELECOMMUNICATIONS ACT OF 1996, 39 B.C.L. REV. 151 (1997).**

**Como resultado de esta ideología monopolística, muchos estados permitieron que compañías locales adquirieran un monopolio de los servicios de telecomunicaciones.[7]**

**A través de los años, con el avance en la tecnología, muchos comenzaron a retar la premisa básica de la teoría del "monopolio natural"; como resultado de ello, dicha teoría comenzó a deteriorarse, y comenzaron a surgir nuevas oportunidades para la competencia.[8]**

Finalmente, en el 1996, el Congreso aprobó la Ley Federal de Telecomunicaciones, ante. Mediante esta nueva ley se establece un régimen de desreglamentación, dirigido a eliminar las barreras de la competencia, y a abrir los mercados a la competencia.[9] Para cumplir con este régimen, la Sección 253 de Ley Federal de Telecomunicaciones de 1996 prohibe a los estados legislar para impedir que una entidad provea servicios interestatales o intraestatales.[10] La referida sección de ley elimina todas las franquicias de monopolios de las compañías locales. Sin embargo, el Congreso estaba consciente que la desreglamentación no sería suficiente para eliminar los monopolios locales, por lo que, en la Sección 251, impuso obligaciones a los acarreadores de servicios telefónicos, tales como,

---

[7] **Véase nota 6.**

[8] **Véase nota 6 y 7.**

[9] **Véase nota 6.**

[10] **47 U.S.C. sec. 253(a).**

interconectarse con otros acarreadores.[11] Además, prohibió a los acarreadores locales establecer condiciones discriminatorias o prohibir la reventa de los servicios de telecomunicaciones.[12]

Además de estas obligaciones aplicables a todos los acarreadores locales, los acarreadores incumbentes, es decir, los que existían cuando se aprobó la Ley de Telecomunicaciones en el 1996, ante, están obligados a proveer a otras compañías, mediante tarifas justas y razonables, la interconexión a su red.[13]

**Como resultado de la aprobación de la Ley Federal de Telecomunicaciones de 1996,ante, y luego de estudiar las necesidades de Puerto Rico en el área de las telecomunicaciones, la Asamblea Legislativa de Puerto Rico aprobó la Ley 213 de 12 de septiembre de 1996, mediante la cual se creó la Junta Reglamentadora de las Telecomunicaciones y otorgó a ésta, los poderes y prerrogativas necesarias para cumplir con el propósito legislativo de la misma. Es alrededor de la Ley 213, ante, en específico de los poderes que la misma otorga a la Junta Reglamentadora, que gira la controversia del caso de autos.**

**Aclarado lo anterior es menester que expongamos los preceptos básicos que rigen en nuestro ordenamiento jurídico en torno a las decisiones administrativas.**

---

[11] **47 U.S.C. sec. 251.**

[12] **47 U.S.C. sec. 251(b)(1).**

[13] **47 U.S.C. sec. 251 (c)(2)(B)**

III

La revisión judicial de las decisiones administrativas comprende tres aspectos: (1) la concesión del remedio apropiado, (2) las determinaciones de hechos y (3) las conclusiones de derecho del organismo administrativo. Véanse, LPAU, sec. 4.5, 3 L.P.R.A. § 2175 (1992); Reyes Salcedo v. Policía de Puerto Rico, res. el 13 de mayo de 1997, 143 D.P.R. ____ (1997); Demetrio Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme sec. 9.3, en la pág. 521 (1993).

**Al ejercer su función, el tribunal debe examinar primero si la actuación del organismo administrativo se ajusta al poder que le ha sido delegado, Viajes Gallardo v. Clavell, 131 D.P.R. 275 (1992); Hernández Denton v. Quiñones Desdier, 102 D.P.R. 218, 223-24 (1974), pues de lo contrario su actuación sería ultra vires y, como consecuencia, nula. Véase, Fuertes v. Administración de Reglamentos y Permisos, 134 D.P.R. 947 (1993); P.S.P. v. Com. Estatal de Elecciones, 110 D.P.R. 400, 409 (1980); Del Rey v. J.A.C.L., 107 D.P.R. 348, 355 (1978); E.L.A. v. Rivera, 88 D.P.R. 196, 199 (1963); Infante v. Tribunal Examinador Médicos, 84 D.P.R. 308, 314 n. 5 (1961).**

**En relación con las determinaciones de hechos de la agencia, la sección 4.5 de la LPAU establece que éstas deben ser sostenidas por el tribunal revisor siempre que estén basadas en "evidencia sustancial" contenida en el expediente administrativo. 3 L.P.R.A. § 2175 (1992); véase, además, Metropolitana, S.E. v. Administración de**

**Reglamentos y Permisos**, res. el 10 de abril de 1995, 138 D.P.R.____ (1995). Esta disposición recoge estatutariamente la norma jurisprudencial que establece que, de ordinario, los tribunales no deben intervenir con las determinaciones de hechos de un organismo administrativo si éstas encuentran apoyo en prueba suficiente que surja del récord considerado en su totalidad. Véase, **Metropolitana, S.E. v. Administración de Reglamentos y Permisos**, ante; **Facultad para las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior**, 133 D.P.R. 521 (1993); **Rodrigo v. Tribunal Superior**, 101 D.P.R. 151, 154 (1973); **López v. Junta de Planificación**, ante; **Hilton Hotels v. Junta de Salario Mínimo**, 74 D.P.R. 670, 686-87 (1953). El propósito de la regla de evidencia sustancial aplicable a las determinaciones de hechos es "evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor". **Reyes Salcedo v. Policía de Puerto Rico**, supra, en la pág. 959; véase además, **López v. Junta de Planificación**, ante; **Ledesma v. Tribunal de Distrito**, 73 D.P.R. 396, 401 (1952).

Las conclusiones de derecho de la agencia, distinto de las determinaciones de hechos, pueden ser revisadas "en todos sus aspectos por el tribunal", LPAU, sec. 4.5, 3 L.P.R.A. § 2175 (1992), sin sujeción a norma o criterio alguno. Véase, Miranda v. Comisión Estatal de Elecciones, ante. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia,

sustituyendo el criterio de ésta por el propio. Al contrario, hemos reiterado consistentemente--antes y después de la vigencia de la LPAU--que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos. Véase, Metropolitana, S.E. v. Administración de Reglamentos y Permisos, ante; Facultad para Las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior, ante; Fuertes v. Administración de Reglamentos y Permisos, ante; Viajes Gallardo v. Clavell, ante.[14] Esta deferencia responde al reconocimiento de que "las agencias administrativas son instrumentos necesarios para la interpretación de la ley". Miranda v. Comisión Estatal de Elecciones, ante.

Las conclusiones de derecho del organismo administrativo, claro está, deben estar sujetas al mandato de la ley y, en la medida que lo hagan, deben ser sostenidas por el tribunal revisor. Véase, Código Civil de P.R., Art. 14, 31 L.P.R.A. § 14 (1993); Román v. Superintendente de la Policía, ante; Cotto Guadalupe v. Departamento de Educación, res. el 15 de junio de 1995, 138 D.P.R.___ (1995); Cía. Azucarera Toa v. Com. Serv. Público, 71 D.P.R. 212 (1950). En los casos marginales o

---

[14] Véase, además: Vázquez v. A.R.P.E., 128 D.P.R. 513, 523-24 (1991); A.R.P.E. v. J.A.C.L., 124 D.P.R. 858, 864 (1989); M & V Orthodontics v. Negdo. Seg. Empleo, 115 D.P.R. 183, 189 (1984); Rubin Ramírez v. Trías Monge, 111 D.P.R. 481, 484-85 (1981); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692 (1975); Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87, 96 (1974); Román v. Superintendente de la Policía, 93 D.P.R. 685, 690 (1966); Reyes v. Junta de Planificación, 79 D.P.R. 620, 629 (1956); Ledesma v. Tribunal de Distrito, ante.

dudosos, la interpretación de un estatuto por la agencia encargada de velar por su cumplimiento merece deferencia sustancial, aun cuando esa interpretación no sea la única razonable. De Jesús v. Dpto. de Servicios Sociales, 123 D.P.R. 407, 418 (1989); Vázquez v. A.R.P.E., ante.[15]

Esa interpretación se debe ajustar "al fundamento racional o fin esencial de la ley y la política pública que la inspira[n]". Industria Cortinera, Inc. v. Puerto Rico Telephone Co., 132 D.P.R. 654 (1993) (citas omitidas); véase además, Código Civil de P.R., Art. 19, 31 L.P.R.A. § 19 (1993); Comisionado de Seguros de Puerto Rico v. General Accident Ins. Co., ante; Vázquez v. A.R.P.E., ante; A.R.P.E. v. Ozores Pérez, ante; Esso Standard Oil v. A.P.P.R., 95 D.P.R. 772, 785 (1968); Coll v. Picó, 82 D.P.R. 27, 33 (1960); Debién v. Junta de Contabilidad, 76 D.P.R. 96, 105 (1954).


## IV

La validez constitucional de la delegación de poder adjudicativo a una agencia administrativa es un principio firmemente establecido en nuestro ordenamiento. López Vives v. Policía de P.R., 118 D.P.R. 219, 230 (1987). En su

---

[15] **Véase, además, Álvarez Cintrón v. Junta de Directores del Condominio Villa Caparra Executive, res. el 17 de mayo de 1996, 140 D.P.R.___ (1996); Ríos Colón v. Corporación del Fondo del Seguro del Estado, res. el 11 de octubre de 1995, 139 D.P.R.___ (1995); Comisionado de Seguros de Puerto Rico v. General Accident Ins. Co., 132 D.P.R. 543 (1993); Asoc. Médica de P.R. v. Cruz Azul, 118 D.P.R. 669, 678; A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816, 821 (1986); Tormos & D.A.C.O. v. F.R. Technology, 116 D.P.R. 153, 160-61 (1985).**

función adjudicativa, las agencias administrativas deciden controversias mediante la aplicación de las normas de derecho vigentes a los hechos específicos del caso. Hernández Denton v. Quiñones Desdier, ante.

Al interpretar el alcance de los poderes delegados a la agencia administrativa, no debemos limitar el análisis a una interpretación restrictiva del estatuto habilitador. Lebrón Lugo v. EL Comandante Operating Co. Inc., res. el 14 de mayo de 1999, 99 TSPR 74. "La cuestión que nos ocupa debe examinarse dentro del amplio marco del desarrollo del derecho administrativo y de las nuevas corrientes en la administración de la justicia. Es a veces difícil extraer el significado de un estatuto ateniéndonos tan sólo a sus términos escuetos, sin referencia a las circunstancias, advertibles por los tribunales, que lo producen." Hernández Denton v. Quiñones Desdier, ante.

**La correcta solución del presente caso hace necesario que reseñemos brevemente algunos postulados de hermenéutica legal. Como es sabido, las diferentes secciones de un estatuto deben ser interpretadas las unas con las otras, esto es, en conjunto, como un todo armónico y efectivo, y no separadas o aisladamente. Pueblo en interés del menor L.R.R., 125 D.P.R. 78 (1989); A.R.P.E. v. Ozores Pérez, ante. Al evaluar determinado estatuto, tenemos el deber de interpretar las disposiciones de forma armoniosa, esto para no llegar a resultados absurdos. PARDAVCO, Inc. v. Secretario de Hacienda, 104 D.P.R. 65 (1975). Por último,**

en el caso <u>Zambrana Maldonado</u> v. <u>E.L.A.</u>, 129 D.P.R. 740, señalamos que:

"[...] Es por eso que el análisis de una ley debe hacerse teniendo en mente los fines que ésta persigue y de forma tal que la ley se ajuste a la política pública que la inspira. En el proceso de interpretación no debemos desvincularla del problema cuya solución persigue, pues tenemos 'el deber de hacer que el derecho sirva propósitos útiles y evitar una interpretación tan literal que lleve a resultados absurdos'. <u>Pacheco</u> v. <u>Vargas, Alcaide</u>, 120 D.P.R. 404, 409 (1988). Véanse: <u>Passalacqua</u> v. <u>Mun. de San Juan</u>, 116 D.P.R. 618 (1985); R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Caps. 36, 39 y 40."

Tomando en consideración los principios de hermenéutica jurídica antes expuestos y las normas de derecho previamente reseñadas, pasemos a interpretar, a tenor con las mismas las disposiciones de la Ley Núm. 213.

V

Por estar íntimamente relacionados entre sí, procedemos a discutir, de manera conjunta, los tres errores señalados. La controversia ante nuestra consideración se circunscribe a determinar si la Junta Reglamentadora tiene poder para establecer tarifas máximas, basadas en costo, y ordenar a la PRTC establecer unas tarifas iguales o menores a las determinadas por la Junta Reglamentadora.

La controversia en el caso de autos gira alrededor de la Sección 269(f) de la Ley 213, ante, la cual dispone lo siguiente:

"(a) Toda compañía de telecomunicaciones tendrá que someterle a la Junta una relación de sus precios y cargos y cada vez que efectúe un cambio en éstos, tendrá que someterlos simultáneamente con su implantación en el mercado.

(b) La Junta podrá, a solicitud de parte interesada y, mediante una querella, evaluar si los precios y/o cargos establecidos no están basados en su costo, violentando así el principio de una justa y sana competencia. A estos fines, la Junta podrá solicitar de la compañía de telecomunicaciones querellada toda la información pertinente a los precios o cargos establecidos por ella. Esta información estará a la disposición de la parte querellante, excepto que la Junta mantendrá en bases confidenciales y para uso exclusivo de ella aquel material que sea necesario para proteger información propietaria, secretos comerciales o de negocio, según se establece en la sec. 267f de este Capítulo.

(c) La Junta tendrá un máximo de 30 días para adjudicar querellas bajo esta sección. No obstante, la Junta podrá, a solicitud de la compañía de telecomunicaciones querellante, ordenar una suspensión de la aplicación de los precios y/o cargos en cuestión, hasta tanto se resuelva la querella en sus méritos. Toda solicitud para suspender la aplicación temporal de los precios y/o cargos impugnados tendrá que adjudicarse dentro de un plazo no mayor de 5 días a partir de la fecha de radicación de la solicitud al efecto.

(d) Cuando la Junta determine que la estructura de precios y/o cargos no está basada en costos, la Junta podrá ordenar la suspensión permanente de tales precios y cargos y además imponer multas administrativas hasta un máximo de veinticinco mil (25,000) dólares por cada violación a este Capítulo. En el caso de una violación continua, cada día que transcurra constituirá una ofensa por separado, pero el total de la multa impuesta no excederá de doscientos cincuenta mil (250,000) dólares en ningún caso." 27 L.P.R.A. sec.269f.

**La PRTC plantea en su alegato que la Junta Reglamentadora esta limitada, al resolver una querella, a lo estrictamente establecido en el artículo antes transcrito; en otras palabras, sostiene que el hecho de que la Junta Reglamentadora tenga poderes para determinar si una tarifa está, o no, basada en costo en una controversia entre dos compañías, no conlleva el poder implícito de determinar unos topes máximos de tarifas ya que ese poder es tan trascendental y de tanto impacto económico que no puede presumirse por implicación de otro poder, y que el procedimiento de revisión que pretende celebrar la Junta Reglamentadora es ilegal.**

Por otro lado, la TPPR y la Junta Reglamentadora, alegan que un análisis de la Ley 213, ante, y las normas de hermenéutica legal, revela que la Junta Reglamentadora sí tiene poder para establecer topes máximos de tarifas basadas en costos; que la función de eliminar y prohibir tarifas anticompetitivas y establecer tarifas máximas es esencial para que se cumpla el mandato legislativo, esbozado en la Ley 213, de asegurar la existencia de un ambiente competitivo en el campo de las telecomunicaciones; y que el negarle el poder de establecer topes máximos de tarifas a la Junta Reglamentadora derrotaría el propósito de la Ley 213, ante.

La Junta Reglamentadora de las Telecomunicaciones fue creada con el propósito de reglamentar los servicios de telecomunicaciones en Puerto Rico, y además, para dar

cumplimiento y administrar la Ley 213. 27 L.P.R.A. sec.267. En virtud de tales propósitos, se le concedió _poderes_ para adoptar, promulgar, enmendar y derogar aquellas reglas, órdenes y reglamentos según entienda sea necesario y propio al ejercicio de sus facultades y el desempeño de sus deberes. 27 L.P.R.A. sec. 267f. Específicamente se le confirió autoridad a la Junta Reglamentadora para adoptar "la reglamentación necesaria para requerirle al acarreador de servicio conmutado local incumbente que provea servicios y acceso a sus instalaciones a cualquier compañía de telecomunicaciones certificada que lo solicite en cualquier punto de su red donde sea técnicamente viable y en forma segregada (unbundled), incluyendo cualquier característica, función y capacidad de su red, mediante el pago de cargos determinados a base de su costo real y una ganancia como la prevista en la Ley Federal de Comunicaciones y bajo condiciones razonables, no discriminatorias y acordadas mutuamente entre las partes". 27 L.P.R.A. 269a. (Enfasis suplido.)

**Para complementar sus poderes adjudicativos, la Asamblea Legislativa otorgó a la Junta Reglamentadora la facultad de "[i]mponer multas administrativas razonables por violaciones a este Capítulo, sus reglamentos y órdenes; hasta un máximo de veinticinco mil (25,000) dólares por violación. También la autorizó a "[o]rdenar el cese de actividades o actos en violación de cualquier disposición de este Capítulo, o los reglamentos de la Junta Reglamentadora y [o]rdenar que se realice cualquier acto en**

**cumplimiento de las disposiciones de este Capítulo o los reglamentos de la Junta**." 27 L.P.R.A. 267f. **(Enfasis suplido.)**

Además, la Ley 213, ante, dispone que "[l]a Junta Reglamentadora tendrá jurisdicción primaria sobre los servicios de telecomunicaciones, sobre todas las personas que rindan estos servicios dentro del Estado Libre Asociado de Puerto Rico y sobre toda persona con interés directo o indirecto en dichos servicios o compañías". 27 L.P.R.A. 267e. Como guía de interpretación, la Sección 271i de la Ley 213, ante, establece que "[l]as disposiciones de este Capitulo serán interpretadas liberalmente para poder alcanzar sus propósitos...".

**Al amparo de estas disposiciones de la Ley que crea la Junta Reglamentadora de Telecomunicaciones de Puerto Rico, somos del criterio que dicha Junta Reglamentadora no sólo tiene encomendada la función de determinar si una tarifa esta o no basada en costo, sino, además, tiene poderes amplios sobre el particular, incluyendo el de ordenar a una compañía, luego de haberse celebrado el procedimiento adjudicativo y de determinar que dicha compañía ha violado la ley, modificar sus tarifas a unas iguales o menores a unas tarifas basadas en costo determinadas por la Junta Reglamentadora, según la evidencia presentada. Las facultades que su Ley Orgánica le confiere, de modo amplio y patente sobre el particular, incluyen la potestad de emitir resoluciones como la que se impugna en el caso de autos.**

Aparte de los poderes expresos que tiene la Junta Reglamentadora para actuar como lo hizo en el caso de autos, esa agencia tiene también "todos los poderes adicionales implícitos e incidentales que sean apropiados y necesarios para efectuar y llevar a cabo, desempeñar y ejercitar todos los poderes antes mencionados y para alcanzar los propósitos de este Capítulo, sujeto al sobreseimiento de dichos poderes por legislación federal o reglas de la Comisión Federal de Comunicaciones". 27 L.P.R.A. 267i.

La aludida facultad inherente de las agencias administrativas ha sido ampliamente reconocida tanto por tribunales federales como estatales de Estados Unidos. Véase, GEMSCO, Inc. v. Walling, 304 U.S. 244 (1944); Steuart & Bro. v. Bowles, 322 U.S. 318 (1943); Mattes v. U.S., 721 F.2d 1125 (1983); Boffa v. Dpt. of Public Aid, 522 NE 644 (1988); Motor Truck Transfer, Inc. v. Southwestern Transp. Co., 197 Ark. 346, 122 S.W.2d 471 (1938); Drysdale v. S.U.N.Y., 60 Misc.2d 180, 302 N.Y.S.2d 882.

Este Tribunal ha reconocido, y reiterado, que los organismos administrativos tienen facultad inherente para reajustar sus órdenes y resoluciones de acuerdo con lo que la justicia y la razón dicten. Aponte Correa v. Policía de P.R., res. el 5 de diciembre de 1996, 142 D.P.R.___ (1996); Ramos Santiago v. F.S.E., 125 D.P.R. 596 (1990); Martínez v. Tribunal Superior, 88 D.P.R. 717 (1961).

Por otro lado, hemos expresado que la <u>exposición de motivos</u> de una ley, generalmente recoge el propósito que inspiró su creación. Una lectura de la misma revela que la intención del legislador, al aprobar la citada Ley 213, <u>era que la agencia tuviera poderes amplios para corregir la conducta anticompetitiva de las compañías</u>. La exposición de motivos de la ley aquí en controversia expresamente dispone que:

> "La Junta que crea esta legislación operara en forma independiente, dotada con la capacidad y los poderes necesarios para asegurar, facilitar y estimular la construcción y desarrollo de las facilidades de todas las ramas de las Telecomunicaciones en Puerto Rico, <u>promoviendo la competencia justa y efectiva, y detectando y corrigiendo conducta anticompetitiva, a fin de fortalecer esta industria</u> y, por ende, el desarrollo socioeconómico de la ciudadanía en general." Exposición de Motivos de la Ley 213, ante. (Enfasis suplido.)

No hay duda de que la intención de la legislatura, al crear la Junta, no fue únicamente que la Junta Reglamentadora detecte conducta anticompetitiva, <u>sino que también para que corrija la misma</u>. En el caso de autos eso es lo que esta tratando de  hacer la Junta Reglamentadora: <u>corregir la conducta anticompetitiva de la PRTC</u>. Dicho de otra forma, el establecimiento de un "tope" por la Junta en el presente caso <u>no</u> es otra cosa que la <u>acción correctiva</u> de fijar una tarifa, <u>a base de costo</u>, que la Junta entiende es la apropiada y necesaria en protección del bienestar general de la industria de telecomunicaciones y, por ende, de la ciudadanía puertorriqueña; propósito que <u>precisamente</u>

era el que perseguía la Asamblea Legislativa al aprobar la Ley 213.

En conclusión, nada en nuestro ordenamiento jurídico exige que el poder para dictar una orden, como la del caso de autos, tiene que ser expresamente delegado a una agencia. Todo lo contrario, nuestro ordenamiento permite la delegación del poder de adjudicar en términos amplios y generales, y sería absurdo exigirle a la legislatura que incluya en las leyes habilitadoras de las agencias todas las posibles órdenes que una agencia puede dictar para que se entienda delegado dicho poder.

En el caso de autos, la delegación del poder de adjudicar, y en específico el poder de emitir ordenes para exigir el cumplimiento de la Ley 213, ante, se hizo en términos amplios y generales; ello nos obliga a concluir que la orden emitida en el caso de autos fue hecha dentro del poder delegado. Decidir lo contrario distorsionaría la doctrina de la delegación de poderes a las agencias.

Finalmente, la PRTC cuestiona la validez del procedimiento de revisión que celebraría la Junta Reglamentadora en caso de que las tarifas nuevas sometidas por la PRTC sean mayores al tope máximo establecido por la Junta Reglamentadora. No tiene razón. Esta "continuación" del procedimiento de revisión de la tarifa, que en su día presente la PRTC, no es otra cosa a nuestro juicio que la concesión de un debido proceso de ley que garantiza, al máximo, que el tope tarifario establecido por la Junta Reglamentadora no sea uno arbitrario.

Es menester aclarar que en el caso de autos, la orden de la Junta Reglamentadora es claramente de naturaleza parcial porque dispone de un aspecto específico de las cuestiones ante su consideración y no pone fin a la controversia total de la querella que se esta ventilando en dicho foro administrativo. Al emitir la resolución y orden enmendada, la Junta Reglamentadora no ha resuelto, con carácter de finalidad, la querella que tiene ante su consideración. La resolución recurrida conlleva que se continuarán los procedimientos administrativos. En el caso de autos, no es necesario una nueva querella, pues el procedimiento de revisión sería la continuación de los procedimientos adjudicativos originados por la querella presentada por TPPR.

En cuanto a permitir la participación de personas interesadas en el procedimiento de revisión, lo que también es cuestionado por la PRTC, la L.P.A.U. en su Sección 2155 dispone que "[c]ualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento". 3 L.P.R.A. sec.2155. Por su parte, el Reglamento de práctica y procedimiento general aprobado por la Junta Reglamentadora en el 1997, en la Sección 8 también provee para la intervención de cualquier persona que desee participar en cualquier procedimiento adjudicativo. En ambos casos la concesión o negatoria de la petición de intervención queda a discreción de la agencia.

3 L.P.R.A. sec.2155. Por lo tanto, el que la agencia permita la participación de personas interesadas no es ilegal.

Por todo lo anterior, concluimos que la Junta Reglamentadora actuó dentro de la autoridad que le otorga la Ley 213, ante, al establecer unos topes tarifarios máximos, luego de celebrar una vista y evaluar la evidencia presentada en la misma, y ordenar a la PRTC modificar sus tarifas a unas iguales o menores a las establecidas por la Junta Reglamentadora. Del mismo modo, por ser una resolución y orden interlocutoria, el procedimiento de revisión establecido por la Junta Reglamentadora es parte de la querella original por lo que no es necesario la presentación de una nueva querella, y el mismo no es ilegal.

Por los fundamentos antes expuestos, procede la confirmación de la resolución dictada por el Tribunal de Circuito de Apelaciones en el presente caso.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Puerto Rico Telephone
Company

    Peticionaria

      v.              CC-1999-68      CERTIORARI

Junta Reglamentadora de
Telecomunicaciones de
Puerto Rico

    Recurrida

**SENTENCIA**

**San Juan, Puerto Rico a 12 de junio de 2000**

      **Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones en el presente caso.**

      **Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal. Los Jueces Asociados señor Negrón García y señor Corrada del Río inhibidos.**

                      **Isabel Llompart Zeno**
                      **Secretaria del Tribunal Supremo**