*34 SENTENCIA
En esta ocasión nos corresponde determinar si erró el foro apelativo intermedio al no sostener la determinación de la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) de desestimar, fundamentada en el Art. Ill de su Reglamento Procesal(1) y sin la necesidad de una vista evidenciaría previa a tal desestimación, unas apelaciones en las que se alegaba discrimen en la ejecución de unos despidos en virtud de la Ley Núm. 7-2009 intimada.(2) Esto es, los tres casos mencionados en el epígrafe de esta Sentencia tienen como punto de encuentro la controversia acerca de si pro-cede o no la celebración de una vista ante CASARH para que los aquí recurridos presenten la prueba que sostenga las alegaciones insuficientes que incluyeron en sus apelaciones ante ese foro administrativo.
Por los fundamentos que planteamos más adelante en esta Sentencia, se revocan las determinaciones emitidas por el Tribunal de Apelaciones en los casos de epígrafe y se sostienen las resoluciones dictadas por CASARH.
*35 I
Con el propósito de lograr una mayor fluidez y una mejor comprensión de los hechos que dieron origen a la controversia que hoy atendemos, procedemos a exponer por separado los hechos de cada uno de los tres recursos que fueron consolidados. Veamos.
A. Caso CC-2010-1015
La Sra. Aixa Díaz Mercado ocupaba un puesto regular de carrera, gerencial no unionado, como Demógrafa en la Oficina del Coordinador General para el Financiamiento Socioeconómico y Autogestión (Oficina del Coordinador General o agencia), mejor conocida como la Oficina de Comunidades Especiales.(3) El 17 de abril de 2009 dicha oficina le envió a la señora Díaz Mercado la “Certificación de fecha de antigüedad en la agencia”, en la cual se determinó que su antigüedad en el servicio público era 6 años, 10 meses y 21 días. En esa carta se le indicó que si no estaba conforme con la antigüedad certificada, entonces podía presentar un “Formulario de impugnación de fecha de antigüedad notificada” ante la Oficina de Recursos Humanos de la agencia dentro del término establecido. Además, se le notificó que si no presentaba evidencia documental fehaciente o no refutaba la antigüedad certificada en el término correspondiente, sería concluyente la antigüedad notificada por la agencia. La señora Díaz Mercado no refutó la antigüedad certificada en su caso.
Posteriormente, el 25 de septiembre de 2009 la Oficina del Coordinador General remitió una carta a la señora Díaz Mercado en la que le informó que quedaría cesante de su puesto efectivo el 6 de noviembre de 2009, ello conforme al plan de cesantías dispuesto en la Ley 7 y al orden de *36 antigüedad establecido por la Junta de Reestructuración y Estabilización Fiscal (JREF). A su vez, la agencia le indicó que si no estaba de acuerdo con la determinación de cesantía tenía derecho a solicitar una revisión ante CASARH dentro del término de 30 días a partir del recibo de la notificación de la carta.
Inconforme con la determinación, el 23 de octubre de 2009 la señora Díaz Mercado presentó su apelación ante CASARH. En particular, alegó que ella era la única persona que ocupaba el puesto de Demógrafa en la agencia (alegación 10 de la apelación ante CASARH). Además, planteó que ocupaba un puesto de carrera (alegación 9 de la apelación ante CASARH), pero luego señaló que estaba excluida de las disposiciones de la Ley 7 porque cumplía con los criterios de la definición de “empleado de confianza” de la Ley Núm. 184-2004 (Ley 184),(4) aunque no especificó las funciones que consideraba de esa naturaleza (alegaciones 23 y 26 de la apelación ante CASARH). Además, adujo que tiene un derecho propietario sobre su puesto de carrera y que éste le fue privado sin el debido proceso de ley (alegación 37 de la apelación ante CASARH). Por último, en la alegación 45 de la apelación ante CASARH indicó que en el proceso de cesantía “[n]o se tomaron en consideración las normas de antigüedad, ya que se mantendrán trabajando en otras áreas de la Agencia a empleados con menos años de servicios que [ella]”. (Enfasis suplido).(5) Por todo lo cual, la señora Díaz Mercado solicitó a CASARH lo siguiente: (1) que dejara sin efecto la cesantía; (2) la restitución inmediata al puesto de carrera como Demógrafa en la agencia, y (3) el pago retroactivo del salario y los beneficios marginales dejados de devengará.(6)
*37 Después de varios trámites interlocutorios, el 23 de febrero de 2010 (notificada el 5 de abril de 2010) CASARH desestimó y ordenó el archivo de la apelación de la señora Díaz Mercado al entender que del escrito no surgían alegaciones de hechos que constituyeran violación de ley o reglamento alguno ni existía una causa que justificara en derecho la reclamación. CASARH añadió que del expediente no surgía evidencia alguna de que la señora Díaz Mercado hubiese impugnado ante la agencia sus años de antigüedad en el servicio público ni evidencia de años de antigüedad adicionales,(7) por lo que la antigüedad certificada y concluyente era 6 años, 10 meses y 21 días, y con ésta no cumplía el mínimo de antigüedad requerido por la Ley 7. Inconforme, la señora Díaz Mercado presentó su reconsideración ante CASARH el 23 de abril de 2010. En síntesis, reiteró que empleados unionados de la agencia que tenían menos antigüedad que ella continuaron trabajando luego del 6 de noviembre de 2009, ello en clara violación a la Ley 7.(8) El 27 de abril de 2010, notificada el 30 de abril de 2010, CASARH denegó la reconsideración.
Insatisfecha con la decisión de CASARH, el 1 de junio de 2010 la señora Díaz Mercado presentó un recurso de revisión administrativa ante el Tribunal de Apelaciones. En éste expuso que CASARH erró “al declarar que [ella] dejó de exponer un reclamo que amerite la concesión de un remedio y desestimar la apelación”.(9) Aceptó que se encon *38 traba dentro del grupo de empleados al cual le aplicaba la fase de cesantía dispuesta en la Ley 7 y quedaría cesante efectivo el 6 de noviembre de 2009. Sin embargo, argumentó que “un gran número de empleados, que se encuentran en la misma clase que [ella], al día de hoy, permanecen laborando en la agencia aun cuando estos ostentan una menor antigüedad”.(10) Ante esta situación, planteó la violación de su derecho a la igual protección de las leyes y el menoscabo a su derecho “de que se le reconozca la antigüedad certificada y que no fuera cesanteada previo a la cesantía de las personas que ostentan menor antigüedad en el servicio público”.(11) Así, indicó que procedía la celebración de una vista evidenciaría, pues del expediente surgía una controversia de hechos y una violación a la Ley 7.(12) Por todo lo cual, la señora Díaz Mercado pidió que se dejara sin efecto la resolución de CASARH, se ordenara una vista administrativa y se le reinstalara en su empleo.
Por su parte, la Oficina de la Procuradora General, en representación de la agencia, presentó su alegato el 14 de julio de 2010. En aquella ocasión expresó que “la antigüedad notificada por la agencia [...] es concluyente toda vez que no se impugnó la misma oportunamente, por lo que no procede que [...] CASARH se adentre a justipreciar dicha determinación”.(13) Además, en cuanto a la alegación de la señora Díaz Mercado de que había otros empleados de me-nor antigüedad que no fueron cesanteados en la agencia, la *39 Procuradora General sostuvo que esa alegación era insustancial debido a que no se alegó que tales empleados fueran de su misma clasificación, con igual o menor antigüedad que ella, por lo que “ [1] as referencias a supuesto discrimen se reducen a ser meras conjeturas, sin mayor sustancia”.(14)
Luego de examinar los escritos de las partes, el 30 de agosto de 2010 (notificada el 8 de septiembre de 2010) una mayoría del panel de jueces del Tribunal de Apelaciones (Ramírez Nazario y Piñero González, Js.) revocó la resolución de CASARH y devolvió el caso para que ésta celebrara una vista evidenciaría.(15) Ese foro apelativo expresó que
[e]n la referida vista evidenciaría la señora Díaz [Mercado] tendrá oportunidad de presentar la prueba que entienda sostiene sus alegaciones, de forma que, CASARH dilucide si se violentaron las disposiciones de la Ley Núm. 7, supra, según denunciado por [ella] y provea el remedio que proceda [d]e ese ser el caso.(16)
El Tribunal de Apelaciones entendió que de los reclamos expuestos en la apelación ante CASARH y el recurso ante ese foro apelativo surgía que la señora Díaz Mercado ex-puso alegaciones de hechos que constituirían violación a la Ley 7 por parte de la Oficina de la Coordinadora General y, de probarse esto ante CASARH, se justificaría la concesión de un remedio. En particular, el foro apelativo intermedio esbozó que, de haberse violentado el orden de cesantías dispuesto por la Ley 7, o sea, que empleados de menor antigüedad no fueron cesanteados antes que la señora Díaz Mercado, entonces ésta "pudo haber sido objeto de un trato desigual al perder su empleo y sustento antes del *40 tiempo correspondiente”.(17) Por tal razón, el Tribunal de Apelaciones concluyó que era necesario celebrar una vista para atender el asunto sobre si en efecto no se honró el orden de antigüedad dispuesto en la Ley 7.
Mientras, el juez Figueroa Cabán escribió un voto disidente en el que señaló que la señora Díaz Mercado “no impugna con prueba suficiente el cálculo de su antigüedad en el empleo” y que lo que presenta es “una alegación general sobre incumplimiento con las normas que exigen la igual protección de las leyes”.(18) El juez Figueroa Cabán añadió lo siguiente:
A nuestro entender, la situación de grave crisis fiscal que, según el legislador, nuestro país experimenta, exige que este procedimiento de acceso a CASARH se interprete con la agilidad necesaria para alcanzar el propósito legislativo previamente mencionado. De este modo, quien quiera impugnar su cesantía en el contexto de la Ley Núm. 7, supra, tiene que cumplir ciertos requisitos mínimos de umbral. Así pues, el reclamante tiene que levantar una controversia sobre antigüedad relacionada con su empleo y proveer prueba suficiente de su reclamación. En nuestra opinión, no basta levantar cualquier alegación genérica que impugne la antigüedad del empleo para tener acceso al foro administrativo. Por el contrario, debe el reclamante sustentar con algún tipo de prueba su reclamación. (Énfasis suplido).(19)
Más adelante en su voto disidente, el juez Figueroa Cabán expone que “[a]brir con demasiada facilidad la puerta del foro administrativo podría derrotar el objetivo de agilidad que requiere el legislador para atender lo que calificó como una situación urgente”. (Énfasis suplido).(20) Por todo lo cual, el juez Figueroa Cabán concluyó que “al no impugnar su antigüedad bajo los parámetros establecidos en el *41 Art. 37.04 de la Ley Núm. 7, supra, la determinación en controversia advino concluyente [...]”. (Énfasis suplido).(21)
Inconforme con la decisión del foro apelativo intermedio, el 23 de septiembre de 2010 la Procuradora General solicitó reconsideración, pero ese tribunal denegó la petición el 14 de octubre de 2010 (notificada el 20 de octubre de 2010). Así, pues, el 22 de noviembre de 2010 la Procuradora General recurrió ante este Foro con una petición de certiorari y una solicitud en auxilio de jurisdicción. El 2 de diciembre de 2010 expedimos el recurso de certiorari, en el que se señaló como único error lo siguiente:
Erró el Tribunal de Apelaciones al revocar la Resolución de CASARH y ordenar una vista evidenciaría para que la recurrida pruebe sus alegaciones de que empleados de menor antigüedad que ella en otras áreas de la Agencia no fueron cesanteados, a base de alegaciones estereotipadas que no representan hechos justificativos de la concesión de un remedio, como bien entendió el foro administrativos.(22)
La Procuradora General expuso que la determinación del Tribunal de Apelaciones chocaba con la facultad que tiene CASARH de desestimar sumariamente las apelaciones que se presenten cuando éstas no incluyen alegaciones que justifiquen la concesión de un remedio. Sobre esto añadió que la consecuencia del dictamen recurrido es que imposibilita que CASARH utilice los mecanismos procesales que le provee su reglamento, los cuales tienen el propósito de lograr una resolución eficaz y justa ante el sinnúmero de reclamaciones frívolas relacionadas con la implantación de la Ley 7.
Asimismo, la Procuradora General insistió en que la señora Díaz Mercado omitió ofrecer detalles (en su apelación ante CASARH) sobre las clasificaciones o funciones de aquellos empleados que se mantuvieron trabajando en otras áreas de la agencia aun con menor antigüedad que *42 ella, vis a vis las suyas, por lo que se estaba ante una alegación insuficiente. Por todo lo cual, la Procuradora General nos solicitó la revocación del dictamen recurrido y la confirmación de la resolución desestimatoria de CASARH, pues la señora Díaz Mercado no contaba con la antigüedad requerida por la JREF (esa determinación de antigüedad se convirtió en concluyente al no ser impugnada) y no presentó alegaciones suficientes —que justificaran la concesión de remedio— sobre la supuesta ilegalidad en la implantación de la Ley 7 a su caso respecto a otros empleados de menor antigüedad.(23)
El 28 de julio de 2011 la señora Díaz Mercado presentó su alegato. En esencia, reiteró que fue cesanteada de su puesto de carrera y gerencial como Demógrafa mientras “un gran número de empleados unionados con menor antigüedad permanecieron en sus puestos de trabajo hasta el mes de mayo de 2010 en contravención a [...] la [Ley 7] en cuanto al criterio de antigüedad”. (Énfasis suplido).(24) Además, aceptó que las alegaciones que expuso en la apelación ante CASARH eran generales debido a que era imposible obtener información específica sin el descubrimiento de prueba, pero que en la “Moción enmendando apelación” incluyó hechos específicos que demostraban que la Oficina del Coordinador General violó el criterio de antigüedad en el proceso de cesantías. También planteó que ni la Ley 7 ni su jurisprudencia interpretativa imponen que “el criterio de antigüedad se debe reconocer entre empleados de una misma clase”. (Énfasis suplido).(25)
Asimismo, la señora Díaz Mercado indicó que aunque su cesantía era efectiva al 6 de noviembre de 2009, hubo em *43 pleados que estaban en su misma clase y permanecieron en sus empleos hasta mayo de 2010, a pesar de tener menos antigüedad en el servicio público.(26) Por todo lo cual, solicitó la confirmación del dictamen del Tribunal de Apelaciones de forma tal que se celebre la vista ordenada por ese foro, pues entiende que sí existe una controversia sobre si la autoridad nominadora implemento las disposiciones de la Ley 7 utilizando la antigüedad como único criterio para decretar las cesantías. Así, el caso quedó sometido en los méritos el 29 de agosto de 2011.
B. Caso CC-2011-0296
La Sra. Ivelisse Marrero Marcano ocupaba un puesto como Especialista Principal en Recursos Humanos en la Administración de Servicios de Salud Mental y Contra la Adicción (ASSMCA o agencia). Mediante carta de 27 de marzo de 2009, la agencia le informó que su antigüedad en el servicio público era de 7 años y que la fecha en que comenzó a trabajar en el gobierno fue el 25 de enero de 2002. Asimismo, le notificó que si la información indicada no era correcta, entonces debía presentar —ante la agencia— la evidencia documental fehaciente con el “Formulario de impugnación de fecha de antigüedad” en el término establecido.
El 1 de abril de 2009, la señora Marrero Marcano impugnó la fecha de antigüedad ante la agencia. Ella presentó el mencionado formulario en ASSMCA e indicó que no se tomó en cuenta (para calcular su fecha de antigüedad en el servicio público) el tiempo que trabajó por jornal en esa agencia. Específicamente, señaló que —según el expediente de personal— comenzó a trabajar en la agencia el id de octubre de 2001 (con un nombramiento por jornal) y no el 25 de enero de 2002 como adujo ASSMCA.
El 14 de abril de 2009 la agencia emitió una “Certificación de fecha de antigüedad en la agencia” mediante la *44 cual notificó a la señora Marrero Marcano que la fecha de ingreso al servicio público fue el 16 de octubre de 2001 y la antigüedad total era de 7 años, 5 meses y 15 días. En esa carta, la agencia le indicó que si no estaba de acuerdo con la antigüedad certificada, tenía derecho a presentar el formulario de impugnación ante la Oficina de Recursos Humanos de ASSMCA dentro del término correspondiente. Además, se le notificó que si no presentaba evidencia documental fehaciente o no refutaba la antigüedad notificada por la agencia en el término establecido, ésta sería concluyente. La señora Marrero Marcano no refutó esta última antigüedad certificada por la agencia en su caso.
Unos meses más tarde, el 25 de septiembre de 2009 ASSMCA le notificó a la señora Marrero Marcano que quedaría cesante de su puesto efectivo el 6 de noviembre de 2009, ello conforme al plan de cesantías dispuesto en la Ley 7 y al orden de antigüedad establecido por la JREF. La agencia también le informó que si no estaba conforme con la determinación de cesantía tenía derecho a pedir revisión en CASARH dentro del término de 30 días a partir del recibo de la notificación.
Antes de que la señora Marrero Marcano impugnara la determinación de cesantía, el 5 de octubre de 2009 la agencia expidió una nueva certificación en la que indicó que ésta tenía 7 años, 6 meses y 1 día de tiempo trabajado en el servicio público. Así, el 20 de octubre de 2009 la señora Marrero Marcano presentó —por derecho propio— su apelación ante CASARH.
Entre otros asuntos, la señora Marrero Marcano adujo que era una empleada de carrera, que su clase estaba ex-cluida de organización sindical y que su puesto no estaba cobijado por un convenio colectivo (alegaciones 1, 5 y 6 de la apelación ante CASARH). Además, planteó que la Ley 7 y su cesantía violaron varias disposiciones constitucionales y el principio de mérito dispuesto en la Ley 184 (alegaciones 14 a la 39 de la apelación ante CASARH). En particu *45 lar, indicó que la carta de despido fue un acto de discrimen porque violaba el principio de igualdad entre los seres humanos y porque la Ley 7 no se aplicó de la misma forma a todos los empleados (alegación 20 de la apelación ante CASARH). Más adelante, señaló que no se siguió el criterio de antigüedad al efectuar las cesantías, pues no cesantearon a empleados transitorios ni a empleados con menor antigüedad que ella, quienes continuaron trabajando en la agencia (alegaciones 29, 30, 34 y 35 de la apelación ante CASARH). Añadió que esos empleados con menor antigüedad ni siquiera pertenecían a los grupos excluidos en el Art. 37.02 de la Ley 7 (alegación 35 de la apelación ante CASARH). Por último, expuso que su despido fue arbitrario e inconstitucional, pues se violó su derecho propietario al puesto de carrera sin el debido proceso de ley (alegaciones 56 y 59 de la apelación ante CASARH). Por todo lo cual, solicitó que se dejara sin efecto el despido y se le reinstalara de inmediato a su puesto.(27)
CASARH desestimó e indicó que del escrito no surgían alegaciones de hechos que constituyeran violación de ley o reglamento ni existía una causa que justificara en derecho la reclamación. Asimismo, expresó que de las alegaciones incluidas en la apelación no surgía que la señora Marrero Marcano hubiera impugnado el total de años de antigüedad en el servicio público, como tampoco surgía evidencia de años de antigüedad adicionales. Por lo tanto, la antigüedad certificada y concluyente era 7 años, 6 meses y 1 día, y *46 con ésta no cumplía el mínimo de antigüedad requerido por la Ley 7. Así las cosas, el 23 de marzo de 2010 la señora Marrero Marcano solicitó una reconsideración y ASSMCA se opuso. Finalmente, el 26 de marzo de 2010 (notificada el 6 de abril de 2010) CASARH declaró “no ha lugar” dicha petición.
Inconforme con la decisión de CASARH, el 5 de mayo de 2010 la señora Marrero Marcano presentó un recurso de revisión administrativa ante el Tribunal de Apelaciones. Por su parte, el 12 de julio de 2010 la Procuradora General —representando a la agencia— presentó su escrito en oposición al recurso. Así, el 25 de octubre de 2010 —notificada el 2 de noviembre de 2010— el Tribunal de Apelaciones revocó la resolución de CASARH y devolvió el caso para que esa comisión celebrara una vista evidenciaría.(28) El foro apelativo intermedio señaló que el caso de la señora Marrero Marcano planteaba “una controversia de hechos, referente a si en efecto el orden de antigüedad prescrito por la [Ley 7] fue o no honrado y si existen otros criterios que justifiquen su inobservancia”.(29) Por esto la vista ordenada tenía el fin que la señora Marrero Marcano presentara prueba para sostener sus alegaciones, de forma tal que CASARH adjudicara si se violaron las disposiciones de la Ley 7.
Oportunamente, la Procuradora General solicitó una reconsideración y el Tribunal de Apelaciones concedió un término para que la señora Marrero Marcano se expresara. Finalmente, el 9 de marzo de 2011 —notificada el 14 de marzo de 2011— el tribunal apelativo intermedio denegó la reconsideración, mas el Juez Figueroa Gabán sí hubiese reconsiderado.
Así las cosas, el 13 de abril de 2011 la Procuradora Ge *47 neral recurrió a esta Curia con una solicitud de certiorari, una moción en auxilio de jurisdicción y una petición de consolidación con el recurso CC-2010-1015.(30) Como único error, la Procuradora General planteó lo siguiente:
Erró el Tribunal de Apelaciones al revocar la Resolución de CASARH y ordenar una vista evidenciaría para que la recurrida presente prueba que sostenga sus alegaciones, a pesar de que las mismas fueron altamente estereotipadas y no resultaban suficientes para justificar la concesión de un remedio, como bien entendió el foro administrativo a tenor con su Reglamento procesal.
En el recurso de certiorari, la Procuradora General planteó que la decisión recurrida daba al traste con la facultad de CASARH, según dispuesta en su reglamento, de resolver sumariamente las controversias que se le presenten cuando las alegaciones sean insuficientes para justificar la concesión de un remedio. Sobre esto, expuso lo siguiente:
[...] en ausencia de alegación concretizada que los alegados empleados de menor antigüedad eran de la misma clasificación que la reclamante y/o ejercían las mismas funciones, y que no fueron eximidos de la aplicación de la [Ley 7] por virtud expresa del Art. 37.02 o disposición de la JREF, se está ante una reclamación que no justifica la concesión de un remedio respecto a la cual el foro administrativo no tiene necesidad de celebrar vista administrativa y puede resolver el caso al tenor con el Artículo III, Sección (d) del Reglamento Procesal. (Énfasis omitido).(31)
Ante esto, la Procuradora General argumentó que la señora Marrero Marcano debió identificar, como pertenecientes a su misma clasificación y funciones, los empleados que alegadamente no fueron cesanteados aun cuando tenían menor antigüedad que ella, así como detallar que esa clasificación no fue eximida por la Ley 7 o por la JREF. Así, la *48 Procuradora General nos solicitó la revocación de la decisión del Tribunal de Apelaciones y la confirmación de la resolución de CASARH, pues la señora Marrero Marcano no tenía la antigüedad requerida por la JREF ni presentó alegaciones suficientes que justificaran la concesión de un remedio.(32)
En auxilio de nuestra jurisdicción, el 15 de abril de 2011 ordenamos la paralización de los procedimientos en el foro administrativo y la consolidación con el recurso CC-2010-1015.
El 6 de julio de 2011 la señora Marrero Marcano presentó su alegato en oposición. En síntesis, planteó que este caso sí presenta una controversia de hechos sobre si en efecto se honró el orden de antigüedad dispuesto por la Ley 7, por lo que era necesaria la celebración de una vista evidenciaría ante CASARH. Además, señaló que no estaba obligada a incluir detalles en las alegaciones de su escrito de apelación, “puesto que para ello es precisamente la vista administrativa”.(33) Sobre esto expuso que la pretensión de que se presenten alegaciones concretas impone “un riguroso criterio de ‘especificidad’ que no se exige en el Reglamento Procesal promulgado por CASARH”.(34) Añadió que “requerirle [...] una determinada ‘especificidad’ sobre su reclamo de violación de criterio ‘antigüedad’ es impermisible y es contrario a la firme política judicial imperante en esta jurisdicción de fomentar el mayor acceso a los foros adjudicativos”.(35) Por todo ello, adujo que CASARH erró al desestimar su apelación sin ofrecerle la oportunidad de una vista, por lo que nos solicitó que deneguemos la petición de certiorari. El caso quedó sometido en los méritos el 14 de noviembre de 2011.
*49 C. Caso CC-2011-0678
Los cuatro empleados que se mencionan a continuación laboraban en la Administración de Servicios y Desarrollo Agropuecuario (Administración de Servicios o agencia). La Sra. Idalia Alberty Beltrán ocupaba el puesto de Jefa de Operaciones, la Sra. Joan Mercucci Torres era Supervisora del Centro de San Germán, el Sr. Víctor O. Arocho Ramos laboraba como Jefe de Operaciones del Centro Agropecuario de San Sebastián y el Sr. José A. Toro Rodríguez tenía un puesto como Supervisor del Programa de Incentivos de Maquinaria Agrícola.
Según surge de la resolución de CASARH, el 23 de abril de 2009 la agencia envió una carta a cada uno de ellos en la que les informó sobre su antigüedad en el servicio público. En el caso de la señora Alberty Beltrán la antigüedad era 9 años; la de la señora Mercucci Torres era 4 años y 9 meses; la del señor Arocho Ramos era 5 años y 8 meses, y la del señor José A. Toro Rodríguez era 7 años y 6 meses. (36) También surge del expediente que ninguno de esos empleados impugnó la antigüedad que notificó la agenciad.(37)
Varios meses después, el 25 de septiembre de 2009 la Administración de Servicios les envió a estos cuatro empleados sus respectivas cartas, indicándoles que quedarían cesantes efectivo el 6 de noviembre de 2009, ello conforme al plan de cesantías dispuesto en la Ley 7 y al orden de antigüedad expuesto por la JREE A su vez, la agencia les notificó que si no estaban de acuerdo con sus respectivas determinaciones de cesantía, tenían derecho a solicitar revisión ante CASARH dentro del término de 30 días a partir del recibo de la notificación de la carta.
Al estar inconformes con la actuación de la agencia, el 14 de octubre de 2009 los cuatro exempleados presentaron una apelación conjunta ante CASARH. En síntesis, plantearon que eran empleados de carrera y que posean una *50 expectativa de continuidad en sus empleos, por lo que no se les podía privar de su derecho propietario sin el debido proceso de ley. Asimismo, señalaron que siendo la [Administración de Servicios] una agencia adscrita al Departamento de Agricultura [...] tenía que considerarse la antigedad de todos los empleados públicos del Departamento de Agricultura y de la [Administración de Servicios] en igualdad de condiciones.(38) Expresaron, además, que las cesantías se realizaron de manera discriminatoria sin haberse observado criterios objetivos para determinar cuáles empleados debían ser cesanteados.(39) Por todo lo cual, solicitaron la anulación de las cesantías y el pago de los salarios y otros haberes dejados de percibir. Mientras, la agencia contestó la apelación el 4 de noviembre de 2009 con el fundamento de que las cesantías sí se efectuaron conforme a la Ley 7 y el criterio de antigüedad, y que la cantidad global de empleados cesanteados fue determinada por la JREF.
El 14 de diciembre de 2009, CASARH les ordenó a los exempleados que replicaran a la contestación de la agencia y así lo hicieron el 30 de diciembre de 2009. Allí expresaron que la autoridad nominadora falló al determinar la antigüedad de los apelantes y cómo otros empleados en igualdad de circunstancias que los apelantes o con menos antigüedad que éstos permanecieron trabajando en la agencia.(40) Añadieron que CASARH podía tomar conocimiento oficial de lo expresado por funcionarios de la JREF en cuanto a que se habían cometido múltiples errores al evaluar los criterios para determinar los empleados que debían ser cesanteados y los que no. Así, solicitaron una vista administrativa en la que pudieran presentar prueba para sustentar sus alegaciones.
Mediante Resolución de 24 de marzo de 2010 —notifi *51 cada el 5 de abril de 2010—, CASARH declaró “no ha lugar” la apelación de los cuatro exempleados. Concluyó que ni de las alegaciones ni de los anejos de la apelación surgía evidencia de que los exempleados hubiesen impugnado sus años de antigüedad en el servicio público así como tampoco había evidencia de años de antigüedad adicionales. Por ello determinó que éstos no cumplían con el requisito mínimo de antigüedad requerido para quedar exentos de las cesantías. Así, CASARH dejó vigente la determinación de cesantía y decidió no celebrar la vista pública. Los exempleados solicitaron una reconsideración, mas CASARH la declaró “no ha lugar” el 9 de abril de 2010 (notificada el 13 de abril de 2010).
Inconformes con la decisión de CASARH, los exempleados recurrieron al Tribunal de Apelaciones el 10 de mayo de 2010; la Administración de Servicios —representada por la Procuradora General— presentó su escrito el 24 de junio de 2010. Así las cosas, el 30 de agosto de 2010 el foro apelativo intermedio revocó la decisión de CASARH y devolvió el caso para que ésta celebrara una vista en su fondo, ello para determinar si las cesantías cumplieron con los parámetros de la Ley 7 o si la agencia erró al cesantear a esos exempleados.(41) Sobre ese asunto, el Tribunal de Apelaciones subrayó lo siguiente:
Los recurrentes sostienen que la CASARH erró al no concederles la oportunidad de presentar prueba en una vista a los efectos de que no fueron cesanteados otros empleados con me-nos antigüedad.
Los recurrentes no ejercieron su derecho a cuestionar la antigüedad que les fue certificada, dentro del término provisto por la Ley 7, por lo que no les asiste derecho a levantar dicha controversia. Sin embargo, sus alegaciones de que las cesantías decretadas son ilegales por no haberse seguido el criterio de antigüedad que dispone la Ley 7, requiere que se les ofrezca una oportunidad de exponer, defender o presentar prueba para sostener sus alegaciones.
*52 Según el Reglamento Procesal de la CASARH, la Comisión no podrá dictar resoluciones sumarias en las apelaciones en que existan hechos materiales o esenciales controvertidos. La alegación de los recurrentes en lo referente a que fueron cesanteados de sus puestos mientras otros empleados con menor antigüedad permanecen en los mismos, constituye una controversia que plantea hechos esenciales (jue deben ser adjudicados, tras la celebración de una vista. (Enfasis suplido).(42)
La Procuradora General pidió la reconsideración de la sentencia, pero el foro apelativo intermedio declaró “no ha lugar” su petición el 29 de junio de 2011 (notificada el 7 de julio de 2011). Insatisfecha con la decisión, la Procuradora General presentó ante esta Curia una solicitud de certiorari el 8 de agosto de 2011. A su vez, presentó una petición en auxilio de jurisdicción y una solicitud de consolidación con el recurso CC-2010-1015. En particular, la Procuradora General señaló el error siguiente:
Erró el Tribunal de Apelaciones al revocar la Resolución de CASARH y ordenar una vista en su fondo para que la parte recurrida presente prueba que sostenga sus alegaciones, a pesar de que las mismas fueron altamente estereotipadas y no resultaban suficientes para justificar la concesión de un remedio.
La Procuradora General enfatizó en su escrito que la decisión del Tribunal de Apelaciones chocaba con la autoridad de CASARH de resolver de forma sumaria las controversias ante su consideración. Asimismo, señaló que los casos relacionados con la Ley 7 en los que se hicieran alegaciones vagas y especulativas no ameritaban la celebración de una vista administrativa ante CASARH, ya que aceptar ese tipo de alegaciones “resultaría en detrimento del objetivo de agilidad requerido por el legislador para atender una situación de suma urgencia”.(43) Añadió que, debido a la omisión de una alegación concreta de que los *53 empleados de menor antigüedad eran de la misma clasificación que los reclamantes o que ejercían las mismas funciones, y que no fueron eximidos de la aplicación de la Ley 7, entonces se estaba ante una reclamación que no justificaba la concesión de un remedio, por lo que no procedía la vista administrativa.
La Procuradora General expresó además que no existía controversia referente a que los cuatro exempleados no cumplían con el mínimo de años de antigüedad requerido por la JREF. Por todo lo cual, la Procuradora General solicitó la revocación del dictamen del foro apelativo intermedio y, en su lugar, la confirmación de la resolución de CASARH debido a que los exempleados no presentaron alegaciones suficientes que justificaran la concesión de un remedio y no tenían el mínimo de antigüedad requerido para quedar exentos del plan de cesantías de la Ley 7.
De esa forma, el 12 de agosto de 2011 expedimos el auto de certiorari, ordenamos la paralización de los efectos de la decisión recurrida y consolidamos con los casos CC-2010-1015 y CC-2011-0296. Los cuatro exempleados presentaron un “Memorando en oposición a que se expida el auto de certiorari” el 30 de septiembre de 2011. En resumen, indicaron que CASARH. había violado su reglamento al desestimar sumariamente la apelación y más cuando basó su decisión en fundamentos que se apartaban de la controversia sobre si se les cesanteó a pesar de tener mayor antigüedad que otros que continuaron trabajando en la agencia.
Mientras, el 11 de octubre de 2011 —notificada el 17 de octubre de 2011— acogimos el recurso de certiorari como el alegato de la peticionaria y concedimos un término para que los cuatro exempleados presentaran su alegato. Allí le apercibimos de que, si no recibíamos su escrito, el caso quedaría sometido sin el beneficio de su comparecencia. Así, el caso quedó sometido en los méritos el 14 de noviembre de *54 2011 sin la comparecencia de la parte recurrida (los cuatro exempleados).
II
A. La Ley Núm. 7-2009 y el criterio de antigüedad
La Asamblea Legislativa de Puerto Rico aprobó el 9 de marzo de 2009 la Ley Especial Declarando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico (Ley 7), Ley Núm. 7-2009 (3 LPRA see. 8791 et seq.). El propósito de esa legislación fue implantar unas medidas dirigidas a la estabilización fiscal y a la reconstrucción económica de la Isla ante la grave crisis fiscal que atravesaba el Gobierno de Puerto Rico. Como sabemos, una de las medidas de reducción de gastos para atender el déficit estructural incluyó la reducción sustancial en la nómina gubernamental, lo que se atendió mediante el plan de reducción de gastos dispuesto en el Capítulo III de la Ley 7 (Arts. 33 al 46 de la Ley 7 (3 LPRA secs. 8791-8810)). Sobre este asunto, la Legislatura expresó lo siguiente en la Exposición de Motivos del mencionado estatuto: “[c]omo el problema del déficit estructural es un problema del Gobierno en su totalidad, es apropiado implantar un remedio a nivel del Gobierno en su totalidad que trate a todos los empleados públicos por igual y que se rija por el criterio objetivo de antigüedad en el servicio público”. (Enfasis suplido).
Con el fin de reducir la nómina gubernamental, la Ley 7 estableció un plan de tres fases que estaría en manos de la JREF. En particular, la Fase II consistía en un plan de cesantías involuntarias para eliminar puestos de empleados en el servicio público, el cual comenzaría con los empleados de nombramiento transitorio o irregular y luego con aquellos que tuvieran nombramientos permanentes o de carrera. En cuanto a estos últimos, se observaría exclusivamente el criterio de antigüedad para que así fueran *55 cesanteados, en primer término, los empleados de menor antigüedad.(44) De esta manera se garantizaría la aplicación equitativa del criterio objetivo de antigüedad a través de todo el Gobierno de Puerto Rico. Este plan de cesantías solo aplicaría a los empleados de las agencias de la Rama Ejecutiva del Gobierno de Puerto Rico que no estuvieran excluidos por el Art. 37.02 de la Ley 7 (3 LPRA see. 8797).(45)
Por su parte, el Art. 37.04(b)(4) de la Ley 7 (3 LPRA see. 8799(b)(4)) dispone que para determinar la antigüedad de los empleados afectados se considerarán todos los servicios prestados en el servicio público, ello independientemente de las disposiciones de los convenios colectivos, reglamentos, cartas circulares y otros documentos normativos.
En Sánchez et al. v. Depto. Vivienda et al., 184 DPR 95 (2011), dispusimos que a la JREF se le delegó la autoridad de establecer una fecha de corte para computar la antigüedad en el servicio público de aquellos empleados afectados por la Ley 7. Específicamente, expresamos que por medio del Art. 37.04(b)(5) de la Ley 7,(46) la Asamblea Legislativa creó la JREF y que mediante el Art. 37.04(b)(6)(47) le otorgó una delegación amplia de poderes para lograr instrumentalizar la Fase II dispuesta en la Ley 7, la que incluyó el proceso de cesantías.
Ya en Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 94 (2010), cert. denegado, Domínguez Castro v. Puerto Rico, 131 S. Ct. 152 (2010), habíamos señalado que el Art. 37.04(b) de la Ley 7, supra, “establece claramente que las facultades que se le delegan a la J.R.E.F. y que están relacionadas a las cesantías de los empleados públicos, deben *56 guiarse y regirse por el criterio de antigüedad”. (Énfasis suplido). Así pues, a través del Art. 37.04(b)(8) de la Ley 7,(48) la Legislatura ordenó que las agencias identificaran y certificaran a la JREF la antigüedad de cada uno de sus empleados. De esa forma, el 2 de noviembre de 2009 la JREF emitió la Carta Circular Núm. 2009-16, en la que se establecía el proceso para determinar los empleados públicos que se afectarían por el plan de cesantías establecido en el Capítulo III de la Ley 7. Asimismo, la JREF incluyó las tres determinaciones sobre antigüedad que se utilizaron para establecer cuáles empleados públicos serían afectados por el plan de cesantías. Las determinaciones fueron las siguientes:
(1) Para asegurar que el cómputo de la antigüedad se realizara de manera uniforme para todos los empleados públicos, la JREF estableció una fecha de corte de antigüedad del 17 de abril de 2009. Es decir, la antigüedad para todos los empleados públicos se determinó usando los años en el servicio público acumulados hasta dicha fecha.
(2) En la primera ronda de cesantías, efectiva el 10 de julio de 2009, fueron afectados los empleados públicos que a la fecha de corte de 17 de abril de 2009 contaban con una antigüedad en el servicio público igual o menor a nueve (9) meses y diecisiete (17) días contados.
(3) En la segunda ronda de cesantías, efectiva el 6 de noviembre de 2009 o la fecha posterior que le sea notificada al empleado, según haya sido autorizado por la JREF, fueron afectados empleados públicos que a la fecha de corte de 17 de abril de 2009 contaban con una antigüedad en el servicio público igual o menor a trece (13) años, seis (6) meses y cero (0) días.(49)
Lo anterior refleja que la JREF actuó conforme a las facultades delegadas por la Ley 7, pues estableció una fecha objetiva y uniforme de cómputo de antigüedad con el fin de “brindar uniformidad al proceso y evitar cualquier señalamiento de discrimen por ideas políticas u *57 otros [...]”.(50) No obstante, la Ley 7 proveyó para que el empleado público que considerara que su despido no fue conforme al criterio de antigüedad, tuviera entonces la oportunidad de impugnar la determinación de la agencia pertinente.
B. El proceso de impugnación de antigüedad
La Asamblea Legislativa ordenó a las agencias que identificaran y certificaran a la JREF la antigüedad de sus empleados. Asimismo, las agencias certificarían —por escrito— la fecha de antigüedad a los empleados afectados y, en caso de que éstos pertenecieran a una organización sindical, la agencia también notificaría a la Junta. En dicha comunicación, la agencia le informaba al empleado el derecho a exponer y fundamentar —por escrito— su versión acerca de su fecha de antigüedad. Art. 37.04(b)(8) de la Ley 7 (3 LPRA sec. 8799(b)(8)).
Una vez notificado del asunto, el empleado afectado tenía un término de treinta días para presentar —ante la agencia— el formulario provisto con copia de la evidencia documental fehaciente que refutara la antigüedad certificada por la agencia. Art. 37.04(b)(9) de la Ley 7 (3 LPRA sec. 8799(b)(9)). En caso de que el empleado público no refutara o presentara dicha evidencia para sostener su posición, entonces se utilizaría la antigüedad notificada por la agencia y ésta sería concluyente para todo propósito relacionado con el Capítulo III de la Ley 7. Art. 37.04(b)(10) (3 LPRA sec. 8799(b)(10)). Por el contrario, si el empleado público presentaba evidencia documental fehaciente que controvirtiera la antigüedad notificada, en ese caso la agencia no podía tomar una determinación final sobre la antigüedad sin antes conceder al empleado una vista *58 previa. Art. 37.04(b)(ll) de la Ley 7 (3 LPRA see. 8799(b)(ll)).
De acuerdo con el Art. 37.04(b)(12) de la Ley 7 (3 LPRA sec. 8799(b)(12)), ya fuese que el empleado no presentara evidencia documental fehaciente para refutar la antigüedad notificada o que, habiéndola presentado, se le brindó una vista previa, la agencia notificaría la determinación final al empleado y le apercibiría sobre su derecho a solicitar una revisión ante CASARH. No obstante, según el Art. 37.04(b)(13) de la Ley 7 (3 LPRA sec. 8799(b)(13)), esa revisión sería solo en cuanto al asunto de la antigüedad. Por último, se establece que la agencia notificaría la cesantía al empleado al menos treinta días antes de la fecha de efectividad de la misma. Art. 37.04(b)(15) de la Ley 7 (3 LPRA sec. 8799(b)(15)).
C. CASARH y su Reglamento Procesal
La Legislatura de Puerto Rico dispuso que CASARH(51) sería el foro con “expertise” para dirimir las controversias relacionadas con las acciones tomadas al amparo del Capítulo III de la Ley 7, es decir, los Arts. 33 al 46 del mencionado estatuto, 3 LPRA sees. 8791-8810. Según dispuesto en el Art. 46(a) de la Ley 7 (3 LPRA sec. 8810(a)), esa Comisión tendría jurisdicción para atender las apelaciones surgidas como consecuencia de las acciones o las decisiones en relación con todo aquello que no confligiera con dicho Capítulo, de aquellos empleados no cubiertos por la Ley *59 Núm. 45-1998.(52) Asimismo, tendría jurisdicción apelativa voluntaria sobre tales acciones o decisiones tomadas en cuanto a los empleados no organizados sindicalmente de aquellas agencias excluidas de la aplicación de las disposiciones de la Ley 184.(53)
El mismo Art. 46(a) de la Ley 7, supra, señala que los procedimientos ante CASARH se regirían por lo dispuesto en la Ley 184 y el Reglamento Procesal de CASARH. Según se establece en el mencionado reglamento, su propósito es “establecer y actualizar los mecanismos y normas procesales que regirán el descargo de la función adjudicativa de [CASARH] y aplicará en todos los procedimientos ante la Comisión”.(54)
En lo pertinente al presente caso, la Sec. 2.1(a)(vii) del Reglamento Procesal de CASARH, pág. 5, establece que la solicitud de apelación deberá incluir lo siguiente: (a) exposición de hechos constitutivos de reclamo o infracción; (b) solicitud de remedio, y (c) disposición legal o reglamentaria en que se base la solicitud de remedio que se suplica, si se conoce. Mientras, la Sec. 2.1(a)(viii), id., dispone que en las reclamaciones de discrimen se deberán “[e\xpresar detalladamente en el escrito original los hechos específicos en que basa su alegación, los cuales tienen que establecer de su faz la existencia de actuación discriminatoria”. (Enfasis suplido).
Por su parte, el Art. Ill del mencionado Reglamento Procesal señala que CASARH “podrá decretar el archivo total o parcial de una apelación, o desestimar una oposición o defensa levantada contra la misma por frivolidad, incumplimiento, abandono o prematuridad, entre otros”. *60 (Énfasis suplido).(55) Entre las causas para archivar o desestimar encontramos la dispuesta por el inciso (d) de dicho artículo, que dispone de la manera siguiente:
d. Cuando en el escrito de apelación no se exponga alegación de hecho alguna que constituya violación de ley o reglamento, o causa que, de ser creída, justifique en derecho la reclamación. Art. 111(d) del Reglamento Procesal, supra, pág. 15.
D. La revisión judicial de las decisiones emitidas por las agencias administrativas
La función central de la revisión judicial, según nos señala el profesor Demetrio Fernández, “es asegurarse de que las agencias actúan dentro del marco del poder delegado y consistentes con la política legislativa”.(56) En nuestro ordenamiento jurídico es norma reiterada que los tribunales apelativos debemos conceder gran deferencia a las determinaciones de las agencias administrativas por la ex-periencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 940 (2010).(57) Por esa razón, las determinaciones de las agencias poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas. Batista, Nobbe v. Jta. Directores, 185 DPR 206, 215 (2012).(58) Esto significa que quien impugne la decisión administrativa tiene que presentar evidencia suficiente para derrotar esa *61 presunción y no puede descansar en meras alegaciones. Pacheco v. Estancias, 160 DPR 409, 431 (2003).(59)
La See. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), 3 LPRA see. 2175, delimita la facultad que tienen los tribunales para revisar las decisiones administrativas. Calderón Otero v. C.F.S.E., 181 DPR 386, 396 (2011). En particular, esa disposición establece que:

See. 2175. Revisión-Alcance

El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.
Así, pues, vemos que la revisión judicial de las decisiones administrativas se limita a considerar los tres aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas, ello mediante una revisión completa y absoluta. Pagán Santiago et al. v. ASR, 185 DPR 341, 358 (2012).(60)
Conforme a la LPAU y según hemos reconocido en un sinnúmero de ocasiones, las determinaciones de hecho de una agencia se sostendrán si éstas se fundamentan en evidencia sustancial que conste en el expediente administrativo considerado en su totalidad. Torres Santiago v. Depto. *62 Justicia, 181 DPR 969, 1003 (2011).(61) Para tales fines, la evidencia sustancial es aquella prueba relevante que una mente racional podría considerar como adecuada para sostener una conclusión. JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 187 (2009).(62) En varias ocasiones hemos indicado que el propósito de la regla de evidencia sustancial, aplicable a las determinaciones de hecho, es “ ‘evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor’ ”. P.R.T.C. v. J. Reg. Tel. de P.R., 151 DPR 269, 282 (2000), citando a Reyes Salcedo v. Policía de P.R., 143 DPR 85, 95 (1997).(63)
Asimismo, hemos señalado que el principio rector en la revisión judicial de las determinaciones e interpretaciones de una agencia es el criterio de la razonabilidad, esto es, la razonabilidad en la actuación de la agencia recurrida. Mun. San Juan v. Plaza Las Américas, 169 DPR 310, 323 (2006).(64) Conforme a ello, la revisión judicial se debe limitar a determinar si la agencia actuó de manera arbitraria o ilegal, o en forma tan irrazonable que su actuación constituye un abuso de discreción. Calderón Otero v. C.F.S.E., supra, pág. 396.
En cuanto a las conclusiones de derecho de las agencias administrativas, la See. 4.5 de la LPAU, supra, dispone que éstas “serán revisables en todos sus aspectos por el tribunal”, ello sin ataduras a norma o criterio alguno. No obstante, esto no significa que “el tribunal pueda descartar ligeramente las conclusiones e interpretaciones de la agencia gubernamental, sustituyendo el criterio de ésta por el *63 propio”. Calderón Otero v. C.F.S.E., supra, pág. 397.(65) Asimismo, hemos expresado que las conclusiones de derecho del ente administrativo deben ser conforme al mandato de la ley y, si así ocurre, el foro revisor entonces debe sostenerlas. Misión Ind. P.R. v. J.P., 146 DPR 64, 133 (1998).
Como ya hemos esbozado en varias instancias, en caso de que la interpretación de ley que haya hecho la agencia sea razonable —aunque ésta no fuese la única razonable—, los tribunales debemos darle deferencia al foro administrativo. Hernández, Álvarez v. Centro Unido, 168 DPR 592, 616 (2006). Sin embargo, esa deferencia a la decisión de una agencia administrativa cede cuando: (1) la decisión no se basa en evidencia sustancial; (2) el ente administrativo erró en la aplicación de la ley o del reglamento; (3) la agencia actuó de forma arbitraria, irrazonable o ilegal, o (4) la actuación administrativa afecta derechos fundamentales o conduce a la comisión de injusticias. Mun. San Juan v. Plaza Las Américas, supra, pág. 324; Martínez v. Rosado, 165 DPR 582, 590 (2005).(66)
Evaluemos, entonces, el señalamiento de error indicado por la parte peticionaria —la Procuradora General— quien acude en representación de las agencias administrativas antes mencionadas.
III
La controversia que debemos resolver en esta ocasión es relativamente sencilla, específicamente, si procede o no la celebración de una vista ante CASARH para que los aquí recurridos presenten prueba que sostenga las alegaciones *64 insuficientes que incluyeron en sus respectivas apelaciones ante ese foro administrativo. En los tres casos de epígrafe, el tribunal apelativo intermedio revocó la decisión de CASARH y ordenó que ésta celebrara una vista con el mencionado propósito.(67) No obstante, luego de examinar cuidadosamente el expediente y analizar el derecho aplicable al caso, estamos convencidos de que el Tribunal de Apelaciones erró al resolver como lo hizo.
En síntesis, en los tres casos la Procuradora General planteó que la decisión del Tribunal de Apelaciones de ordenar una vista chocaba con la facultad de CASARH para desestimar sumariamente las apelaciones que se le presenten, cuando éstas no incluyen alegaciones que justifiquen la concesión de un remedio. A su vez, argumentó en los tres casos que la decisión del foro apelativo intermedio imposibilitaba que CASARH utilizara los mecanismos procesales que le provee su reglamento, los cuales tienen el fin de lograr una resolución eficaz y justa ante la gran cantidad de reclamaciones frívolas relacionadas con la implantación de la Ley 7. En cuanto a la insuficiencia de las alegaciones, la Procuradora General argumentó que los recurridos —en sus respectivas apelaciones ante CASARH— omitieron identificar, como pertenecientes a su misma clasificación y funciones, aquellos empleados que alegadamente no fueron cesanteados a pesar de tener menor antigüedad que ellos.
A. Caso CC-2010-1015
En el caso de la señora Díaz Mercado, ésta planteó en su alegato que un gran número de empleados unionados que tenían menor antigüedad que ella estuvieron en sus puestos de trabajo hasta mayo de 2010, ello en contra de la Ley 7 y el criterio de antigüedad. Asimismo, informó que em *65 pleados de su misma clase permanecieron en sus puestos hasta mayo de 2010 aun con menos años de servicio público que ella. También señaló que ni la Ley 7 ni la jurisprudencia han establecido que el criterio de antigüedad se debe reconocer entre empleados de una misma clase. A su vez, argumentó que en el proceso de cesantías no se tomó en cuenta el criterio de antigüedad, puesto que empleados con menos años de servicio seguirían laborando en otras áreas de la agencia. Además, vale mencionar que la señora Díaz Mercado aceptó que las alegaciones expuestas en su apelación ante CASARH eran generales.
Aquí lo cierto es que la señora Díaz Mercado no era unionada, sino una empleada de carrera y gerencial, por lo que claramente no estaba en la misma situación que los empleados unionados de la agencia, a quienes se les pospuso su cesantía porque la JREF ordenó la renotificación de las cesantías. En cuanto al señalamiento de que hubo empleados de su misma clase que permanecieron en sus puestos a pesar de tener menor antigüedad que ella, es pertinente expresar que la misma señora Díaz Mercado ha indicado que ella era la única persona que ocupaba el puesto de Demógrafa en la Oficina del Coordinador General. Por consiguiente, no era posible que otro empleado de su misma clasificación y menor antigüedad permaneciera en su empleo. Mientras, el planteamiento de la señora Díaz Mercado en cuanto a que ni la Ley 7 ni la jurisprudencia han establecido que el criterio de antigüedad se debe reconocer entre empleados de una misma clase, constituye un argumento fútil, puesto que es totalmente claro que la estructura de la administración de los recursos humanos en el Gobierno de Puerto Rico se hace conforme a clases y clasificaciones de puestos. Por último, es innegable que la señora Díaz Mercado aceptó que sus alegaciones en la apelación ante CASARH eran generales y que por ello intentó suplementarias con una “Moción enmendando apelación”. No obstante, como mencionamos an *66 teriormente, no surge del expediente que CASARH hubiese aceptado dicha enmienda a la apelación, por lo que esa petición se entiende como no presentada.
B. CC-2011-0296
En relación con el caso de la señora Marrero Marcano, ésta indicó en su alegato que no tenía que incluir detalles en las alegaciones de su apelación ante CASARH, pues para eso era la vista ante ese foro. Además, adujo que exigirle alegaciones específicas sobre su reclamo de violación del criterio de antigüedad era impermisible, pues esto no lo requería el Reglamento Procesal de CASARH. Es imperativo señalar que debido a que la señora Marrero Marcano alegó —en su apelación ante CASARH— que su despido fue un acto discriminatorio porque la Ley 7 no fue aplicada de la misma forma a todos los empleados y no se siguió el criterio de antigüedad al efectuar las cesantías, sí era requisito del Reglamento Procesal de CASARH el “[e]xpresar detalladamente en el escrito original los hechos específicos en que basa su alegación, los cuales tienen que establecer de su faz la existencia de actuación discriminatoria’’.(68)
C. CC-2011-0678
Respecto al caso de las señoras Alberty Beltrán y Mercucci Torres, y los señores Arocho Ramos y Toro Rodríguez, éstos no presentaron su alegato conforme le ordenamos; solo habían presentado un memorando en oposición a que se expidiera el recurso. No obstante, hacemos referencia a que estos cuatro recurridos expresaron —en su apelación ante CASARH— que en su agencia las cesantías se hicieron de manera discriminatoria, pues no se observaron criterios objetivos para evaluar cuáles empleados debían ser cesanteados. Como ya mencionamos, ante sus alegaciones de discrimen en el proceso de cesantías era preciso que *67 incluyeran —en el escrito original ante CASARH— los hechos específicos en que basaban esa alegación.
Como vemos, en los tres casos reseñados, los recurridos presentaron ante CASARH unos escritos de apelación en los que de forma muy general esbozaron el planteamiento siguiente: “X” fue cesanteado como consecuencia de la implantación de la Ley 7 en la agencia “Y” mientras que empleados con menos años de servicio público que ‘X” continuaron trabajando en la agencia “Y”. Es decir, alegaron de forma sucinta un asunto que requería entrar en detalles particulares, como lo serían mencionar aquellos otros empleados de la misma clasificación y funciones que permanecieron en la agencia, el tiempo aproximado de antigüedad de éstos en el servicio público y que no fueron eximidos de la aplicación de la Ley 7 por virtud expresa del Art. 37.02 de dicho estatuto, supra.
Los aquí recurridos tenían un reclamo basado en un alegado discrimen, específicamente relacionado con el proceso de cesantías, debido a que ellos aseguraban que la Ley 7 no se aplicó de la misma manera a todos los empleados y no se siguió el criterio de antigüedad dispuesto en dicho estatuto. Ante esa realidad, lo cierto es que procedía que estos presentaran ante CASARH un escrito de apelación conforme a la Sec. 2.1(a)(viii) del Reglamento Procesal de CASARH. Esa disposición establece que en las reclamaciones de discrimen se deben “[e]xpresar detalladamente en el escrito original los hechos específicos en que basa su alegación, los cuales tienen que establecer de su faz la existencia de actuación discriminatoria”. íd., pág. 5. Ninguno de los recurridos cumplió con esa importante disposición del Reglamento Procesal. Sin duda, tal incumplimiento resulta suficiente para que la agencia desestimara como lo hizo, máxime cuando de ninguno de los expedientes surge razón alguna por la cual los recurridos no pudieron obtener *68 al menos evidencia prima facie que sostuviera sus alegaciones.(69)
Es patente que CASARH tuvo ante su consideración unas apelaciones con alegaciones insuficientes en las que claramente no se justificaba la concesión de un remedio, ya que omitían información específica requerida en este tipo de reclamaciones. Ante esa situación, CASARH —en fiel cumplimiento con su reglamento— desestimó y ordenó el archivo de las apelaciones de los recurridos al entender que no surgían alegaciones de hechos que constituyeran violación de ley o reglamento ni existía una causa que justificara en derecho las reclamaciones. Para ese proceder, el foro administrativo utilizó el mecanismo provisto por el inciso (d) del Art. Ill de su Reglamento Procesal, es decir, el archivo total o parcial de una apelación. Posteriormente, el Tribunal de Apelaciones revocó a CASARH y ordenó la celebración de una vista en los mencionados casos de manera tal que los aquí recurridos pudieran presentar prueba para sostener sus alegaciones y así CASARH pudiera dilucidar si se violentaron las disposiciones de la Ley 7.
Concluimos que CASARH actuó conforme a derecho, y sus conclusiones se fundamentaron en prueba sustancial que obra en el expediente y en su interpretación de la normativa aplicable. La actuación de CASARH se dio dentro del marco de razonabilidad, por lo que el Tribunal de Apelaciones debió otorgarle deferencia a la determinación que tomó ese foro administrativo en cada uno de los casos *69 reseñados. Al no hacerlo así, el Tribunal de Apelaciones erró en su proceder. Por consiguiente, resolvemos que no procede la celebración de una vista ante CASARH para que los aquí recurridos presenten evidencia que sostenga las alegaciones insuficientes que incluyeron en sus apelaciones ante ese foro administrativo.
IV
Por los fundamentos antes mencionados, este Tribunal revoca las sentencias dictadas por el Tribunal de Apelaciones en los casos de epígrafe y, en consecuencia, se sostiene las resoluciones emitidas por CASARH.
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente Señor Hernández Denton emitió una opinión disidente. La Jueza Asociada Señora Fiol Matta disintió sin opinión escrita. La Juez Asociada Reñora Rodríguez Rodríguez hace constar la expresión siguiente: “La Juez Asociada señora Rodríguez Rodríguez disiente de este caso por las mismas razones que la llevaron a emitir una opinión disidente en Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 158 (2012)”.
0Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 El inciso (d) del Art. Ill del Reglamento Procesal, Reglamento Núm. 7313 de la Comisión Apelativa del Sistema de Administración de Recursos Humanos, 7 de marzo de 2007, págs. 14-15, en lo pertinente, establece lo siguiente:
“La Comisión podrá decretar el archivo total o parcial de una apelación, o desestimar una oposición o defensa levantada contra la misma por frivolidad, incumplimiento, abandono o prematuridad, entre otros. Entre las causas de archivo o desestimación se encuentran las siguientes instancias:
“d. Cuando en el escrito de apelación no se exponga alegación de hecho alguna que constituya violación de ley o reglamento, o causa que, de ser creída, justifique en derecho la reclamación”.

 Ley Especial Declarando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico, Ley Núm. 7-2009 (3 LPRA see. 8791 et seq.) (Ley 7).

 Véanse: Certiorari en el caso CC-2010-1015, pág. 5; Apéndice del Certiorari en el caso CC-2010-1015, págs. 47-48.

 Ley para la Administración de los Recursos Humanos en el Servicio Público, 3 LPRA see. 1461 et seq.

 Apéndice del Certiorari en el caso CC-2010-1015, pág. 55.

 Más adelante, el 16 de febrero de 2010, la señora Díaz Mercado presentó una “Moción enmendando apelación”. No obstante, es importante señalar que del expediente no surge que la Comisión Apelativa del Sistema de Administración de Recur *37 sos Humanos (CASARH) hubiese autorizado la enmienda a la apelación; además, en la resolución recurrida ni siquiera se mencionó esa solicitud de enmienda. Por lo tanto, debemos concluir que CASARH no autorizó la enmienda a la apelación y, por consiguiente, no la tomó en cuenta cuando resolvió la apelación de la señora Díaz Mercado.
Específicamente, el inciso (13) del Art. X del Reglamento Procesal, supra, pág. 35, de CASARH define “enmienda” como la “[m]odificaeión de un escrito autorizado por la Comisión a solicitud de parte”.

 Apéndice del Certiorari en el caso CC-2010-1015, pág. 83.

 La señora Díaz Mercado incluyó los nombres de nueve empleados unionados de la agencia y sus respectivos años de antigüedad en el servicio público. Apéndice del Certiorari en el caso CC-2010-1015, pág. 90.

 Apéndice del Certiorari en el caso CC-2010-1015, pág. 41.

 íd., pág. 43.'

 íd.

 La señora Díaz Mercado expuso que “[e]l derecho concedido por la [Ley 7] para que se utilice el orden de antigüedad como criterio para determinar el proceso de cesantías activa la cl[á]usula constitucional de debido proceso de ley. Entre los derechos reconocidos bajo, la cl[á]usula de debido proceso de ley se encuentra la celebración de una vista ante un juez imparcial, la presentación de prueba y el poder confrontar la prueba en contra”. Apéndice del Certiorari, pág. 43. Añadió que ella “se encuentra dentro del grupo de los empleados sujetos a cesantía, pero en la aplicación de las disposiciones de la [Ley 7[, [é\sta ha sido tratada de forma desigual y discriminatoria en violación directa a las disposiciones legales y las garantías constitucionales que le cobijan”. (Énfasis suplido). íd., pág. 44.

 Apéndice del Certiorari en el caso CC-2010-1015, pág. 114.

 íd., pág. 113.

 Esa vista evidenciaría sería una previa oportunidad para descubrir prueba conforme a la Sec. 2.11 del Art. II del Reglamento Procesal, supra, págs. 12-13. Apéndice del Certiorari en el caso CC-2010-1015, pág. 16.

 Apéndice del Certiorari en el caso CC-2010-1015, pág. 16.

 íd, pág. 13.

 íd, pág. 22.

 íd, pág. 21.

 íd, pág. 22.

 íd., pág. 23.

 Certiorari en el caso CC-2010-1015, pág. 7.

 Conforme nos solicitó la Procuradora General, el 20 de abril de 2011 aceptamos la petición de certiorari como el alegato de la peticionaria y concedimos un término para que la señora Díaz Mercado presentara su alegato, pero ésta nos solicitó una prórroga y así la concedimos mediante resolución el 10 de junio de 2011 (notificada el 28 de junio de 2011).

 Alegato de réplica, caso CC-2011-0296, pág. 2.

 íd., pág. 10.

 íd., pág. 14.

 Según surge del expediente, el 8 de marzo de 2010 la señora Marrero Marcano presentó ante CASARH una “Moción informativa asumiendo representación legal y solicitando permiso para enmendar la apelación o en la alternativa, se le anote la rebeldía a la parte demandada” y una “Apelación enmendada”. Véase Apéndice del Alegato en oposición a recurso de certiorari, caso CC-2011-0296, págs. 68-89.
Sin embargo, en el expediente no consta que CASARH hubiese autorizado la enmienda a la apelación. Además, un hecho interesante es que para el 19 de febrero de 2010 (notificada el 3 de marzo de 2010) CASARH ya había desestimado y ordenado el archivo de la apelación de la señora Marrero Marcano, por lo que CASARH no pudo haber autorizado la enmienda a la apelación; por consiguiente, no la tomó en cuenta al resolver el caso. Véase el escolio 6 para la definición de “enmienda” conforme al Reglamento Procesal, supra.

 Dicha vista evidenciaría sería una oportunidad previa para descubrir prueba conforme a la Sec. 2.11 del Reglamento Procesal, supra. Apéndice del Alegato en oposición al recurso de certiorari, caso CC-2011-0296, pág. 177.

 Apéndice del Alegato en oposición a recurso de certiorari, caso CC-2011-0296, pág. 177.

 Aixa Díaz Mercado v. Oficina del Coordinador General para el Fideicomiso Socioeconómico y Autogestión, CC-2010-1015.

 Petición de certiorari en el caso CC-2011-0296, pág. 17.

 A petición de la Procuradora General, el 10 de junio de 2011 acogimos su recurso como el alegato de la peticionaria.

 Alegato en oposición a recurso de certiorari en el caso CC-2011-0296, pág. 14.

 íd., pág. 15.

 íd., pág. 16.

 Apéndice de la Petición de certiorari en el caso CC-2011-0678, pág. 55.

 íd.

 Apéndice de la Petición de certiorari en el caso CC-2011-0678, pág. 45.

 íd.

 íd., pág. 52.

 Como consecuencia de un error en la notificación original de la sentencia, el Tribunal de Apelaciones emitió una notificación enmendada el 1 de junio de 2011.

 Apéndice de la Petición de certiorari en el caso CC-2011-0678, pág. 24.

 Petición de certiorari en el caso CC-2011-0678, pág. 10.

 Art. 37.04(b)(3) de la Ley 7 (3 LPRA sec. 8799(b)(3)).

 En relación con la definición de “agencia”, véase el Art. 33(a) de la Ley 7 (3 LPRA sec. 8791(a)). En cuanto a la aplicabilidad del estatuto y las agencias exentas, refiérase al Art. 34 de la Ley 7 (3 LPRA see. 8792).

 3 LPRA sec. 8799(b)(5).

 3 LPRA sec. 8799(b)(6).

 3 LPRA sec. 8799(b)(8).

 Carta Circular Núm. 2009-16 de la JREF, pág. 2.

 Sánchez et al. v. Depto. Vivienda et al., 184 DPR 95, 116 (2011). Véase la mencionada opinión para una referencia más completa sobre el asunto de la delegación de poderes y otras controversias relacionadas con la Ley 7.

B1) Vale mencionar que luego de la aprobación de la Ley 7 el 9 de marzo de 2009, en virtud del Plan de Reorganización Núm. 2 de 26 de julio de 2010 se creó la Comisión Apelativa del Servicio Público (CASP) para fusionar la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP).
Específicamente, CASP es un organismo cuasijudicial en la Rama Ejecutiva, que se especializa en asuntos obrero-patronales y del principio de mérito. Dicho ente atiende casos laborales, querellas y asuntos de administración de recursos humanos en relación con los empleados cobijados por la Ley Núm. 45-1998, infra, y aquellos cubiertos por la Ley Núm. 184-2004, infra. Además, CASP atiende los casos instados al amparo de la Carta de Derechos de los Empleados Miembros de una Organización Laboral, Ley Núm. 333-2004. Véase DACo v. AFSCME, 185 DPR 1, 12 (2012).

 Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45-1998 (3 LPRA see. 1451 et seq.).

 Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico de 2004, Ley Núm. 184-2004 (3 LPRA see. 1461 et seq.).

 Reglamento Procesal supra, pág. 1.

 íd., pág. 14.

 o Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed. rev., Bogotá, Ed. Forum, 2001, pág. 517.

 Véanse, además: Pereira Suárez v. Jta. Dir. Cond., 182 DPR 485, 511 (2011); Com. Seg. v. Real Legacy Assurance, 179 DPR 692, 717 (2010); Mun. de San Juan v. CRIM, 178 DPR 163, 175 (2010); Martínez v. Rosado, 165 DPR 582, 589 (2005); Otero v. Toyota, 163 DPR 716, 727 (2005); Misión Ind. P.R. v. J.P., 146 DPR 64, 130 (1998).

 IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 744 (2012); Torres Santiago v. Depto. Justicia, 181 DPR 969, 1002-1003 (2011); Calderón Otero v. C.F.S.E., 181 DPR 386, 395-396 (2011).

 Véase, también, Com. Vec. Pro-Mej., Inc. v. J.P., 147 DPR 750, 761 (1999).

 Véanse: Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 940 (2010); Rivera v. A & C Development Corp., 144 DPR 450 (1997); Fernández Quiñones, op. cit., pág. 534.

 Véanse, también: Asoc. Fcias. v. Caribe Specialty et al. II, supra; JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 186-187 (2009); Hernández, Álvarez v. Centro Unido, 168 DPR 592, 614-615 (2006).

 Torres Santiago v. Depto. Justicia, supra, pág. 1003; Pacheco v. Estancias, 160 DPR 409, 432 (2003).

 Misión Ind. P.R. v. J.P., supra, pág. 131.

 Véase, además, Rebollo v. Yiyi Motors, 161 DPR 69, 76 (2004).

 Véanse, también: Mun. San Juan v. Plaza Las Américas, 169 DPR 310, 324 (2006); P.R.T.C. v. J. Reg. Tel. de P.R., 151 DPR 269, 282 (2000); Pacheco v. Estancias, supra, pág. 433.

 Véase, además, Costa, Piovanetti v. Caguas Expressway, 149 DPR 881, 889 (1999).

 Es importante señalar que tanto el Tribunal de Apelaciones como las partes en el pleito han utilizado indistintamente los términos ‘Vista evidenciaría”, ‘Vista administrativa” y ‘Vista en su fondo” para referirse a la vista ante CASARH. No obstante, el término correcto es ‘Vista pública”, el cual se define como “[aludiencia contenciosa celebrada ante un Oficial Examinador o agente autorizado”. Art. X(29) del Reglamento Procesal, supra, pág. 37.

 Véase Sec. 2.1(a)(viii) del Reglamento Procesal, supra, pág. 5.

 Asimismo, es importante recalcar —ante los señalamientos esbozados en la opinión disidente del Juez Presidente Señor Hernández Denton— que los recurridos no alegaron en sus escritos ante el Tribunal de Apelaciones y ante esta Curia lo dispuesto en la Sec. 2.1(d) del Reglamento Procesal de CASARH. Es decir, en ningún momento los recurridos plantearon que ante el “defecto” en la presentación de sus apelaciones en CASARH procedía una notificación de defecto con el propósito de una posterior subsanación de deficiencia en el término dispuesto.
Como sabemos, nuestro Derecho es rogado y corresponde a las partes hacer los planteamientos que fueren menester. Tal como mencionamos en S.L.G. Lloréns v. Srio. de Justicia, 152 DPR 2, 8 (2000), nuestro sistema es adversativo, de derecho rogado, que descansa sobre la premisa de que las partes, cuidando sus derechos e intereses, son los mejores guardianes de lapureza de los procesos.